John T. HILL, Descomp, Inc., Data Controls North, Inc., Virgil and Marie Scott, Thomas L. and Patricia A. Ruger, and James R. Stritzinger, Plaintiffs,

v.

Lee P. DER, Lee P. Der, Inc., Lancaster Court Associates, Lancaster Associates, Inc., Stuart Bittelman, Marvin E. Greenfield, Wilmington House Associates, Eagle Associates, Orgas, Ltd., David E. Karr, Martin E. Mason, Der-Mas, Inc., Lee Mar, Inc., Roger W. Ball, Alma Coal Enterprises, Limited, and, D & S Financial, Inc., Defendants.

Civ. A. No. 80–146.

United States District Court,
D. Delaware.

Sept. 17, 1981.

Harvey S. Kronfeld, Philadelphia, Pa., and Rawle & Henderson, Philadelphia, Pa., of counsel, for plaintiffs.

Robert C. Lefton, Wilmington, Del., Morton S. Taubman, Tom M. Schaumberg and

Leslie Glick of Plaia, Schaumberg & Taubman, Chartered, Washington, D.C., Lionel E. Pashkoff of Danzansky, Dickey, Tydings, Quint & Gordon, Washington, D.C., of counsel, for defendants Lee P. Der, Lee P. Der, Inc., Wilmington House Associates, Eagle Associates, Orgas, Ltd., David E. Karr, Martin Mason, Der-Mas, Inc., Lee Mar, Inc., Roger W. Ball, Alma Coal Enterprises, Ltd., and D & S Financial, Inc.

David A. Drexler, Wilmington, Del., for defendants Lancaster Court Associates, Lancaster Associates, Inc., Stuart Bittelman and Marvin Greenfield.

## OPINION

LATCHUM, Chief Judge.

This complex action, involving multiple parties, alleges violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and regulations of the Securities and Exchange Commission promulgated thereunder. In addition, plaintiffs allege various state claims under the laws of Delaware and Maryland. The complaint contains twenty-four counts, each of which purports to state a separate claim against various combinations of the defendants. (Docket Item ["D.I."] 1.) Jurisdiction is predicated on section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), section 27 of the Exchange Act, 15 U.S.C. § 78aa, and principles of pendent jurisdiction. (D.I. 1, ¶¶ 2, 3.)

Certain of the defendants[1] have moved to dismiss all but Count Seventeen of the complaint, under Rule 12(b), F.R.Civ.P., on the following grounds: (1) there is no implied private right of action under section 17(a) of the Securities Act; (2) the claims based on section 12(2) of the Securities Act and sections 10(b) and 15(c) of the Exchange Act, and Rule 10b–5 promulgated thereunder, contained in Count One, are barred by the applicable statutes of limitations for those provisions; (3) Counts Eight, Sixteen and Eighteen, which allege additional claims under sections 10(b) and 15 of the Exchange Act, and Rules 10b–5 and 15b10–3 promulgated thereunder, fail to state a cause of action; and (4) the punitive damages sought by plaintiffs, as a matter of law, are not recoverable under the federal securities laws. (D.I. 13.) Defendants contend that if the Court concurs in each of the foregoing arguments, the only federal count remaining in the complaint will be Count Seventeen, which alleges a single isolated violation of the registration provisions of the Securities Act as to one plaintiff. (D.I. 13 at 27.) Defendants argue that this Count does not arise from the same nucleus of operative facts as the pendant state law claims and, accordingly, those state claims should be dismissed. (D.I. 13 at 28.) Defendants' contentions will be addressed in turn.

I. *Implied Right of Action Under Section 17(a)*

Counts One, Eight and Eighteen of plaintiffs' complaint are based in part on § 17(a) of the Securities Act. This section provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Violations of § 17(a) may provide a basis for injunctive relief, 15 U.S.C. § 77t, or,

---

1. Defendants Lee P. Der, Lee P. Der, Inc., Wilmington House Associates, Eagle Associates, Orgas, Ltd., David E. Karr, Martin E. Mason, Der-Mas, Inc., Lee Mar, Inc., Roger W. Ball, Alma Coal Enterprises, Ltd., and D & S Financial, Inc., have all joined in the motion.

may give rise to criminal liability if the violation is willful, 15 U.S.C. § 77x. The Securities Act by its terms, however, contains express civil damage remedies only in §§ 11 and 12 and does not provide an express private cause of action for damages under § 17(a). Accordingly, the issue before the Court is whether such a cause of action may be implied. The Supreme Court reserved ruling upon the propriety of implying a cause of action under § 17(a) in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734 n.6, 95 S.Ct. 1917, 1924 n.6, 44 L.Ed.2d 539 (1975), and the issue remains an open question both in the Third Circuit and in this District.

Those courts which have wrestled with this problem have reached conflicting conclusions. Four of the five courts of appeals considering the issue have, without extended discussion, found an implied right of action under § 17(a). *Compare Stephenson v. Calpine Conifers II Ltd.*, 652 F.2d 808, 815 (C.A.9, 1981) (private right of action implied); *Kirshner v. United States*, 603 F.2d 234, 241 (C.A.2, 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223, 1244–45 (C.A.7, 1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Newman v. Prior*, 518 F.2d 97, 99 (C.A.4, 1975) *with Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (C.A.8, 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (private right of action not implied). The district courts, however, have generally been far less receptive to claims of implied remedies under this section of the Securities Act. *Compare Campito v. McManus, Longe, Brockwehl, Inc.*, 470 F.Supp. 986, 993 (N.D.N.Y.1979) (private right of action implied); *DeMarco v. Security Planning Service, Inc.*, 462 F.Supp. 1066, 1069 (D.Ariz.1978); *Valles Salgado v. Piedmont Capital Corp.*, 452 F.Supp. 853, 857 (D.P.R. 1978); *Osborne v. Mallory*, 86 F.Supp. 869, 878–79 (S.D.N.Y.1949) *with Ingram Industries v. Nowicki*, 502 F.Supp. 1060, 1069 (E.D.Ky.1980) (private right of action not implied); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 652 (N.D.Cal.1980); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F.Supp. 1069, 1080 (N.D.Cal.1979); *Woods v. Homes & Structures, Inc.*, 489 F.Supp. 1270, 1288 (D.Kan.1980); *Martin v. Howard, Weil, Labouisse, Friedricks, Inc.*, 487 F.Supp. 503, 507 (E.D.La.1980); *Lingenfelter v. Title Ins. Co.*, 442 F.Supp. 981, 989 (D.Neb.1977); *Gunter v. Hutcheson*, 433 F.Supp. 42, 45 (N.D.Ga.1977); *Architectual League of N.Y. v. Bartos*, 404 F.Supp. 304, 313 (S.D.N.Y.1975); *Reid v. Mann*, 381 F.Supp. 525, 528 (N.D.Ill.1974); *Ferland v. Orange Groves of Florida, Inc.*, 377 F.Supp. 690, 706–707 (M.D.Fla.1974); *Dyer v. Eastern Trust & Banking Co.*, 336 F.Supp. 890, 903–905 (D.Me.1971); *Emmi v. First-Manufacturers National Bank*, 336 F.Supp. 629, 635 (D.Me.1971); *Williams v. Nutritional Associates*, [1980] Fed.Sec.L.Rep. (CCH) ¶ 97,678 at 98,563 (D.D.C.1980); *Cowsar v. Regional Recreations, Inc.*, 65 F.R.D. 394, 398 (M.D.La.1974).

Nonetheless, despite the apparent controversy surrounding this issue, the Court believes that it would be blind to recent developments in the Supreme Court if it were to recognize an implied right of action under § 17(a). *See United States v. City of Philadelphia*, 644 F.2d 187, 192 (C.A.3, 1980). Although private damage actions were at one time readily inferred from statutory provisions which did not afford express civil remedies and were regarded as necessary supplements to enforcement of the underlying statutory schemes, in recent years the Supreme Court has sharply limited the availability of implied private remedies. An understanding of the metamorphosis which the implied remedies doctrine has undergone is necessary in order to appreciate fully the Court's reluctance to imply a cause of action under § 17(a).

The modern genesis of the Supreme Court's approach to implied remedies can be traced to a series of cases originating with *J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), in which the Court found an implied right of action under the proxy provisions of the Exchange Act. In that and subsequent cases, the

Court created implied rights of action, in the absence of any evidence of Congressional authorization or acquiescence, on the theory that such remedies were necessary to vindicate important federal interests. These decisions appeared to rest on the presumption that a civil damage remedy ordinarily would be inferred from a blanket statutory prohibition, unless there was some persuasive indication that Congress intended existing remedies and procedures to be exclusive. *United States v. City of Philadelphia, supra*, 644 F.2d at 192; *see Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 200, 88 S.Ct. 379, 385, 19 L.Ed.2d 407 (1967).

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court took a first restrained step towards curbing the inexorable flow of private damage actions resulting from *Borak* and its progeny. In that case, the Court outlined four factors which must be considered in determining whether a private right of action should be implied from a federal statute:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citation omitted).

Although the four *Cort* factors were in theory designed to tighten existing strictures on implied remedies and to turn aside unjustified attempts to create new civil damage actions, the lower courts seized on the flexible framework of the opinion to continue the prevailing liberal attitude towards implied remedies. *See Cannon v. University of Chicago*, 441 U.S. 677, 740–42,

99 S.Ct. 1946, 1980–81, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) and cases cited therein. As a result, in cases subsequent to *Cort*, the Supreme Court moved toward adoption of a more stringent test in which the question of legislative intent came to subsume the other *Cort* elements. Frankel, *Implied Rights of Action*, 67 Va.L.R. 553, 560 (1981). As noted in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1978):

It is true that in *Cort v. Ash*, the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78 [95 S.Ct. at 2087]—are ones traditionally relied upon in determining legislative intent.

*Id.* at 575–76, 99 S.Ct. at 2489.

In recent implied action cases, the Court has further refined this more limited approach by extending a prominent role to the "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). Similarly, the Court has stated that it is now "reluctant to imply a cause of action . . . that is significantly broader than the remedy that Congress chose to provide." *Touche Ross & Co. v. Redington, supra*, 442 U.S. at 574, 99 S.Ct. at 2488; *United States v. City of Philadelphia, supra*, 644 F.2d at 192. In short, the Court has retreated from its earlier generous attitude toward implied private remedies and has adopted in its stead a restrictive litmus test, confining its analysis solely to the narrow question of Congressional intent. *See* Frankel, *Implied Rights of Ac-*

tion, 67 Va.L.R. 553, 562 (1981). *See also* Note, *Federal Courts-Implied Rights of Action, Transamerica Advisors, Inc. v. Lewis,* 21 Bos.C.L.R. 1143 (1980).

Applying this test, the Court has refused to find a private cause of action in virtually every case it has considered in the past several years. *See e. g., Middlesex County Sewerage Authority v. National Sea Clammers Association,* —— U.S. ——, 101 S.Ct. 2615, 68 L.Ed.2d 435 (1981) (no implied right of action under Federal Water Pollution Control Act and Marine Protection, Research and Sanctuaries Act); *California v. Sierra Club,* —— U.S. ——, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (no implied right of action under § 10 of Rivers and Harbors Appropriations Act); *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (no implied right of action under § 1 of the Davis-Bacon Act); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (no implied right of action under § 206 of Investment Advisors Act); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1978) (no implied right of action under § 17(a) of Exchange Act); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (no implied right of action under § 1302 of Indian Civil Rights Act); *Piper v. Cris-Craft Industries,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (no implied right of action under § 14(e) of Exchange Act for unsuccessful tender offerors). *But see Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (implied right of action under Title IX). It is with this recent history in mind that this Court has determined that a private cause of action cannot be implied under § 17(a).

■ The Court turns first to the language of § 17(a) itself. *Universities Research Ass'n, Inc. v. Coutu, supra,* 450 U.S. at 767, 101 S.Ct. at 1460. Concededly, § 17(a) was designed to protect the victims of fraud in the offer or sale of securities and thus to benefit a particular class. *Transamerica Mortgage Advisors, Inc. v.*

*Lewis, supra,* 444 U.S. at 24, 100 S.Ct. at 249. But the mere fact that a statutory provision was enacted to protect a certain class does not necessarily mean that Congress intended that provision to be enforced through private litigation. *Universities Research Ass'n, Inc. v. Coutu, supra,* 450 U.S. at 767, 101 S.Ct. at 1460. Instead, the Court must look for some objective indication of Congressional intent to create such an enforcement mechanism.

The legislative history of the Securities Act negates any such intention. *See Gunter v. Hutcheson,* 433 F.Supp. 42, 45 (N.D. Ga.1977). As Judge Friendly has noted, when the House Committee Report listed the sections that create and define the civil liabilities imposed by the Securities Act, it pointed only to sections 11 and 12. *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (C.A.2), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1968) (Friendly, J., concurring); H.Rep. No.85, 73rd Cong., 1st Sess. 9–10 (1933). Moreover, the carefully crafted structure of the Securities Act itself further reinforces the conclusion that § 17 was not intended to enlarge the civil damage remedies provided by §§ 11 and 12. *See SEC v. Texas Gulf Sulphur Co., supra,* 401 F.2d at 867. A persuasive argument in this respect has been made by Professor Louis Loss:

It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 act, because the specific liabilities created by §§ 9(e), 16(b) and 18 do not cover all the variegated activities with which that act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 act to the detailed remedies specifically created by §§ 11 and 12. The 1933 act is a much more narrower statute. It deals only with disclosure and fraud *in the sale of securities.* It has but two important substantive provisions, §§ 5 and 17(a). Noncompliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all

makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restrictions contained in those sections and the differences between them ... make it seem the less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13, was actually tightened in the 1934 amendments to the Securities Act.

3 L. Loss, Securities Regulation, 1785 (2d ed. 1961).[2]

In *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Supreme Court refused to find an implied right of action under § 206 of the Investment Advisers Act of 1940, an antifraud provision which is strikingly similar to § 17(a).[3] *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 651 (N.D.Cal.1980). Although the Court noted that § 206 was designed to benefit a particular class, 444 U.S. at 24, 100 S.Ct. at 249, it found that the provision simply proscribed certain conduct and was not intended to create or alter any civil liabilities. *Id.* at 19, 100 S.Ct. at 247. In this respect, the Court observed that Congress had provided various judicial and administrative mechanisms for enforcing § 206 and that it was "highly improbable that Congress absentmindedly forgot to mention an intended private action." *Id.* at 20, 100 S.Ct. at 247. The Court also remarked:

> [W]hat evidence of [Congressional] intent exists in this case, circumstantial though

it be, weighs against the implication of a private right of action for a monetary award in a case such as this. Under each of the securities laws that preceded the Act here in question, and under the Investment Company Act of 1940 which was enacted as companion legislation, Congress expressly authorized private suits for damages in prescribed circumstances. For example, Congress provided an express damages remedy for misrepresentations contained in an underwriter's registration statement in § 11(a) of the Securities Act of 1933, and for certain materially misleading statements in § 18(a) of the Securities Exchange Act of 1934. "Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and do so expressly." The fact that it enacted no analogous provisions in the legislation here at issue strongly suggests that Congress was simply unwilling to impose any potential monetary liability to a private suitor.

*Id.* at 20–21, 100 S.Ct. at 247–248 (citations omitted).

As in the case of § 206, Congress expressly provided certain means for enforcing compliance with § 17(a). As noted previously, under § 24 of the Securities Act, 15 U.S.C. § 77x, willful violations of the Act are punishable by fine, imprisonment or both. Similarly, § 20, 15 U.S.C. § 77t, authorizes the SEC to bring civil actions in federal court to enjoin existing or imminent violations of the provisions of the Act, including § 17(a). These compliance measures when juxtaposed with the civil remedies contained in §§ 11 and 12 make it unlikely that Congress "absentmindedly"

---

**2.** Other commentators writing contemporaneously with the passage of the Securities Act, including Commissioner Landis of the Federal Trade Commission who played a principal role in drafting the Act, have expressed the view that § 17(a) was not intended to form the basis for private civil remedies. *SEC v. Texas Gulf Sulphur Co., supra,* 401 F.2d at 867 (Friendly, J., concurring); *see* Landis, *Liability Sections of Securities Act,* 18 Am.Acct. 330, 331 (1933);

Douglas & Bates, *Federal Securities Act of 1933,* 43 Yale L.J. 171, 181–82 (1933); 3 L. Loss, Securities Regulation, 1785–86 (2d ed. 1961).

**3.** Sections 17(a)(1) and 17(a)(3) are almost identical to §§ 206(1) and 206(2). *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 651 n.29 (N.D.Cal.1980). In addition, the language of § 17(a)(2) is substantially incorporated in §§ 11(a) and 12(2) of the Securities Act. *Id.*

omitted an intended private civil remedy under § 17(a).[4]

■ For the foregoing reasons, the Court concludes that § 17(a) does not give rise to a private right of action for damages. Defendants' motion to dismiss those portions of Counts One, Eight and Eighteen of plaintiffs' complaint alleging violations of § 17(a) of the Securities Act will be granted.

## II. Statute of Limitations for Rule 10b–5 Claims

Defendants have moved to dismiss that portion of Count One of the complaint which alleges violations of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder on the ground that these claims are time-barred under the statute of limitations contained in Delaware's Blue Sky law. 6 *Del.C.* § 7323(e). (D.I. 13 at 6.) Count One alleges that the defendants fraudulently induced certain of the plaintiffs to purchase limited partnership interests in "Wilmington House Associates," through a materially false and misleading private offering memorandum and other deceptive oral and written communications. (D.I. 1, ¶¶ 27–40.) Plaintiffs filed this suit on April 1, 1980, more than two years after they entered into agreements to purchase their limited partnership interests. Accordingly, because the Delaware Blue Sky statute of limitations provides that a person may not sue more than two years after the contract of sale, defendants argue that the Rule 10b–5 claims in Count One are untimely and must be dismissed.[5]

In response, plaintiffs contend: (1) that the statute of limitations governing these claims is the three year limitations provision for common law fraud codified at 10 *Del.C.* § 8106 (D.I. 20 at 27); (2) that even if the appropriate statute of limitations is the two year period provided by the Blue Sky law, under recent case law plaintiffs continued to "purchase" securities from the defendants until two months prior to the filing of the complaint and claims arising out of these purchases would be timely (D.I. 20 at 16); and (3) alternatively, that under the equitable tolling doctrine the limitations period did not begin to run until approxi-

4. Although the Supreme Court has recognized an implied right of action under § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), this factor is of no consequence to the propriety of implying a civil remedy under § 17(a). *Ingram Industries v. Nowicki*, 502 F.Supp. 1060, 1069 (E.D.Ky. 1980); *Williams v. Nutritional Associates, Ltd.*, [1980] Securities Regulation (CCH) ¶ 97,678 at 98,563 (D.D.C.1980). As the Supreme Court has noted, "in *Superintendent* this Court simply acquiesced in the 25-year old acceptance by the federal courts of an implied action under § 10(b)." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577–78 n.19, 99 S.Ct. 2479, 2489–90 n.19, 61 L.Ed.2d 82 (1979). Thus, in upholding an implied remedy under § 10(b) the Court was guided more by practical considerations than by principled analysis.

5. In their reply to plaintiffs' brief in opposition to the motion to dismiss, defendants argued for the first time that the 10b–5 claims of the plaintiffs who resided in Pennsylvania at the time of the alleged fraud, namely Mr. and Mrs. Thomas Ruger and Mr. and Mrs. Virgil Scott, must conform to the statute of limitations set by Pennsylvania, rather than Delaware, law. (D.I. 21 at 13–15.) Defendants contend that under the "borrowing statute" of the State of Delaware, claims which accrue outside the state must be measured by the limitations period provided either by Delaware law or the law of the state where the cause of action arose, whichever is shorter. 10 *Del.C.* § 8121. Because Pennsylvania's limitations period for 10b–5 claims purportedly is the shorter of the two available periods, defendants contend that the Pennsylvania statute of limitations must be applied. (D.I. 21 at 14–15.) Defendants have failed to adduce any evidence, however, to demonstrate that the 10b–5 claims of these plaintiffs accrued in Pennsylvania. The allegations of the complaint indicate that all of the critical transactions between the parties occurred in Delaware. For example, the Rugers and the Scotts received the private offering memorandum relating to Wilmington House Associates in Delaware. (D.I. 1, ¶ 30.) In addition, Mr. Ruger and Mr. Scott both met with different defendants on at least two occasions during 1978 in Delaware. (D.I. 1, ¶ 35(f)(i) and (iii).) Accordingly, the Court cannot accept defendants' conclusory and unsubstantiated contentions that the 10b–5 claims of the Rugers and the Scotts accrued in Pennsylvania, and that the limitations period of that state should measure the timeliness of those claims.

mately 17 months before plaintiffs' complaint was filed. (D.I. 20 at 14.) These three issues will be discussed seriatim.

## A. *Length of Limitations Period*

At the outset, the Court must determine the proper length of the limitations period applicable to the 10b–5 claims. Although the federal securities laws contain explicit limitations provisions for those sections which expressly create civil remedies, *see e.g.*, § 13 of Securities Act, 15 U.S.C. § 77m; §§ 9 and 18 of Exchange Act, 15 U.S.C. §§ 78i, 78r, there is no statute of limitations for implied causes of action brought under Rule 10b–5. *Bohem v. Butcher & Singer*, 427 F.Supp. 355, 356 (E.D.Pa.1977). Moreover, federal law does not prescribe any general statute of limitations for civil actions. *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996, 999 (C.A.5, 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975). Consequently, in the absence of any readily discernible federal source from which to craft an appropriate limitations period, the courts have long measured the timeliness of Rule 10b–5 claims by reference to state law, *see United Parcel Service, Inc. v. Mitchell*, —— U.S. ——, ——, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 1389 n.29, 47 L.Ed.2d 668 (1976); *United Auto Workers v. Hossier Cardinal Corp.*, 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1111–1112, 16 L.Ed.2d 192 (1966); *Kubik v. Goldfield*, 479 F.2d 472, 477 n.12 (C.A.3, 1973), and have applied the state statute of limitations which best effectuates the policies advanced by Rule 10b–5. *See Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 608 (C.A.3, 1980); *Charney v. Thomas*, 372 F.2d 97, 100 (C.A.6, 1967). In making this determination, the courts often look to the state cause of action which bears the closest substantive resemblance to Rule 10b–5 and apply the limitations provision applicable to that action. *See Vanderboom v. Sexton*, 422 F.2d 1233, 1237–38 (C.A.8), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Hudak v. Economic Research Analysts, Inc.*, *supra*, 499 F.2d at 999.

As the present case makes clear, in selecting which limitations provision to apply, the courts generally are confronted with only two alternatives—the Blue Sky limitations period or the period for common law fraud actions. *Forrestal Village, Inc. v. Graham*, 551 F.2d 411, 413 (C.A.D.C.1977). In 1956, a court in this district applied Delaware's three year limitations period for common law fraud in determining whether a 10b–5 claim was timely. *Tobacco and Allied Stocks, Inc. v. Transamerica Corp.*, 143 F.Supp. 323, 327–28 (D.Del.1956), *aff'd on other grounds*, 244 F.2d 902 (C.A.3, 1957). Contrary to plaintiffs' contentions, however, this decision is not dispositive of the statute of limitations issue because the court's ruling was handed down prior to the adoption of Delaware's current Blue Sky law in 1973 and the court apparently was not presented with any viable alternative. Accordingly, the task facing the Court is one of first impression; it must determine which limitations provision provided by Delaware law—the three year common law fraud statute of limitations or the two year limitations period provided by the Blue Sky law—best effectuates the federal policies underlying Rule 10b–5.

The federal courts at one time favored invocation of the common law fraud limitations provision for determining the timeliness of 10b–5 actions, *Wachovia Bank and Trust Co. v. Nat'l Student Marketing Corp.*, 650 F.2d 342, 346 (C.A.D.C.1980); *Bohem v. Butcher & Singer*, *supra*, 427 F.Supp. at 356, and at least two courts of appeals, the Ninth and Tenth Circuits, have continued to adhere to this practice. *See United California Bank v. Salik*, 481 F.2d 1012 (C.A.9), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Williams v. Sinclair*, 529 F.2d 1383 (C.A.9, 1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Clegg v. Conk*, 507 F.2d 1351 (C.A.10, 1974), *cert. denied*, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). During the last decade, however, with the advent of state Blue Sky laws more closely mirroring the federal securities acts, the

other circuits have moved toward greater application of the Blue Sky limitations period. *Wachovia Bank and Trust Co. v. Nat'l Student Marketing Corp., supra,* 650 F.2d at 346; *Bohem v. Butcher & Singer, supra,* 427 F.Supp. at 356. The Fourth, Seventh, Eighth, and District of Columbia Circuits have, in recent cases, consistently utilized the Blue Sky statute of limitations in determining whether a 10b–5 action is timely. *See O'Hara v. Kovens,* 625 F.2d 15, 19 (C.A.4, 1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Fox v. Kane Miller Corp.,* 542 F.2d 915, 918 (C.A.4, 1976); *Cahill v. Ernst & Ernst,* 625 F.2d 151, 156 (C.A.7, 1980); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 125 (C.A.7, 1972); *Morris v. Stifel, Nicolaus & Co., Inc.,* 600 F.2d 139, 146 (C.A.8, 1979); *Vanderboom v. Sexton,* 422 F.2d 1233, 1236 (C.A.8), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413 (C.A.D.C.1977). These decisions have stressed the commonality of purpose between the Blue Sky law and Rule 10b–5, observing that both state and federal provisions evince the same fundamental design of implementing a policy of full disclosure.[6] *See Morris v. Stifel, Nicolaus & Co., Inc., supra,* 600 F.2d at 143. The remaining circuits which have considered this issue, the Second, Third, Fifth and Sixth Circuits, have selected the appropriate state statute of limitations on a more ad hoc basis, first determining which state cause of action is most analogous to the contours of the 10b–5 claim alleged in the complaint and then applying the limitations period pertaining to that action. *See e. g., Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 409 (C.A.2, 1975); *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605, 610 (C.A.3, 1980); *Wood v. Combustion Engineering, Inc.,* 643 F.2d 339, 346 (C.A.5, 1981); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 1000 (C.A.5, 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Carothers v. Rice,* 633 F.2d 7, 14–15 (C.A.6, 1980); *I.D.S. Progressive Funds, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 342 (C.A.6, 1976).

The Court has found two decisions of the Third Circuit which have addressed in depth the appropriate limitations period to apply in federal securities suits. In the first case, *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (C.A.3, 1979), the plaintiffs were shareholders in a publicly held corporation controlled by family interests who received a materially false and misleading proxy statement soliciting a favorable vote on a proposed freeze out merger. In reliance on these materials, the plaintiffs surrendered their shares to the corporation and after discovery of the deceptive practices brought suit under §§ 10(b) and 14(a) of the Exchange Act. *Id.* at 452–53. The district court ruled that the claims were barred by the limitations provision of the New Jersey Blue Sky law, but the Court of Appeals reversed, holding that the appropriate limitations provision was that applicable to an action for common law fraud, under which the securities claims were timely. Judges Gibbons and Sloviter, comprising the majority, both observed in separate opinions that the civil liabilities provision of the Blue Sky law, which was modeled on § 12(2) of the federal Securities Act, afforded a damage remedy only to defrauded *buyers* of securities and not to defrauded *sellers* like plaintiffs. *Id.* at 453, 459. Thus because the plaintiffs could not have brought a civil damage action under the Blue Sky law, and could rely only on a common law fraud action for state relief, both Judges concluded that the timeliness of the federal securities action must be determined by resort to the statute of limitations for common law fraud. *Id.* at 453, 459–60.

---

**6.** Most commentators also generally agree that the statutes of limitations contained in state Blue Sky laws should be applied to test the timeliness of 10b–5 actions. *See e. g.,* Fiebach and Doret, "A Quarter Century Later—The Period of Limitations for Rule 10b–5 Damage Actions in Federal Courts Sitting in Pennsylvania," 25 Vill.L.R. 851 (1980); Comment, "Securities Regulation: Statute of Limitations Applicable to 10b–5 Actions Arising in Pennsylvania," 53 Tem.L.Q. 70 (1980); Martin, "Statutes of Limitation in 10b–5 Actions: Which State Statute is Applicable?", 29 Bus.Law. 443 (1979).

Judges Gibbons and Sloviter reached their similar conclusions, however, through divergent analyses. Judge Gibbons reasoned that the limitations period must be selected in "deference to the policy of repose of the forum state" and observed that the "starting point . . . for determining applicable state statutes of limitations is to inquire whether, assuming the operative facts alleged in the complaint, a state court would entertain an action for the relief sought", *i. e.*, an award of money damages. *Id.* at 452. If the same allegations of fact underlying the federal securities claims state a cognizable state cause of action, the federal court would be bound to apply the statute of limitations relative to the state claim. *Id.* at 453. Because the only remedy available to the plaintiffs in state court was a suit for common law fraud, Judge Gibbons concluded that the six year limitations period for that state action must govern the federal securities claims. *Id.*

Judge Sloviter, in her concurring opinion, chose to adopt a more traditional approach in which the federal considerations underlying selection of the limitations period were accorded a more preeminent position. After undertaking an exhaustive analysis of the motivations behind the application of state limitations periods to federal claims, Judge Sloviter concluded that the selection of the relevant policy of repose is ultimately a question of federal law and must be based on "considerations which comport with federal policy." *Id.* at 458. Under this framework, Judge Sloviter concluded that the Blue Sky law generally would provide the appropriate limitations provision for measuring the timeliness of federal securities claims:

> Since Congress has recognized the value of the concurrent operation of the federal [securities] statute and nonconflicting state securities actions, it would in ordinary circumstances lead us to the application of the statute of limitations provision in the state securities act, i. e., the two-year limitation period in the New Jersey blue sky law. That would seemingly supply the provision most consonant with and complimentary to that of the federal scheme.

*Id.* at 459. However, because the New Jersey Blue Sky law did not provide any protection to *sellers* of securities and the legislative history of the state statute clearly indicated that defrauded sellers were relegated to a common law fraud action for relief, Judge Sloviter agreed with Judge Gibbons that the limitations provision for general fraud should be applied to the plaintiffs' federal claims. *Id.* at 459–60. Expressly left unanswered by the decision was which limitations provision would be applied if the Blue Sky law afforded a remedy to the defrauded plaintiffs. *Id.* at 460.

In his dissenting opinion, Chief Judge Seitz formulated yet a third method for determining the relevant limitations provision to apply to federal securities actions. Although Chief Judge Seitz agreed with Judge Sloviter that the court must choose the statute of limitations which best effectuates the federal policies at issue, *id.* at 460–61, he further reasoned that this choice should not turn on literal comparisons of the elements of the state and federal claims involved. Instead, the courts should select the limitations period of the state statute that addresses the same regulatory area as the federal law. *Id.* at 461. Because the New Jersey Blue Sky law regulated the same particular kind of conduct covered by the federal securities acts, while the common law fraud cause of action covered a wide variety of disparate conduct, Chief Judge Seitz concluded that the remedies provided by the Blue Sky law were more closely analogous to a 10b–5 action than an action for common law fraud. *Id.* at 461–62. In addition, he further found that the shorter limitations period granted by the Blue Sky law would better effectuate the federal policies underlying the securities acts. *Id.* at 463. Accordingly, Chief Judge Seitz concluded that he would apply the New Jersey Blue Sky statute of limitations, notwithstanding the fact that the Blue Sky law did not provide a civil damage remedy to the plaintiffs.

A year after the *Roberts* case, the Third Circuit again had occasion to consider the

appropriate state limitations provision to apply to a 10b–5 claim, only this time the question arose in a slightly different factual context under the law of Pennsylvania. In *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605 (C.A.3, 1980), a panel consisting of Judges Gibbons, Sloviter and Weis was confronted with a 10b–5 suit claiming damages from a brokerage house for "churning" or the excessive trading of a customer's account. Judge Sloviter, joined by Judge Gibbons, again found that the plaintiffs did not have a remedy under the Blue Sky law and accordingly ruled that the timeliness of the federal securities action must be governed by the statute of limitations for common law fraud. *Id.* at 610–11. In drawing this conclusion, Judge Sloviter took due account of the varying viewpoints expressed in the *Roberts* case and attempted to harmonize these differences:

> We need not here speculate as to whether the divergence in . . . approach [in *Roberts*] might, in some factual situation, lead us to different results. Indeed Judge Gibbons expressly noted that he did not disagree with my approach . . . . Chief Judge Seitz, writing in dissent, also agreed that the court must choose the state statute of limitations which best effectuates federal policy . . . although he disagreed with our selection.
>
> Whatever the difference in perspectives used by Judge Gibbons and me, we examined the same factors in reaching agreement that the limitations period of the state securities statute was inapplicable. Chief among these factors was that New Jersey's securities statute . . . did not provide a civil remedy for sellers against fraudulent buyers. The federal plaintiff, if relegated to his state cause of action, would therefore have been limited to a suit for common law fraud, an action which would have been maintained within the time in question.

*Id.* at 608.

Although the Pennsylvania Blue Sky law in *Biggans* contained an antifraud provision patterned on Rule 10b–5, which the court interpreted as prohibiting "churning," this section could be the subject only of injunc-

tive relief or criminal penalties and did not afford private parties a civil damage action. *Id.* at 609. In addition, while the civil liabilities provision of the Blue Sky law, which like its New Jersey analogue was modeled on § 12(2) of the Securities Act, extended a cause of action to both defrauded sellers *and* buyers, it could only support an action for rescission and would be unavailing in a damage suit against a broker for "churning." *Id.* at 610. Finally, the Pennsylvania Blue Sky law expressly stated that its remedies were not exclusive and would not limit any liabilities existing at common law. *Id.* Accordingly, the court concluded that:

> [The] reasoning which underlay the decision of the court to apply the New Jersey common law fraud statute of limitations in *Roberts* compels a similar result in this case. Where the state Blue Sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities actions.

*Id.*

In dissent, Judge Weis adopted the analysis outlined by Chief Judge Seitz in the *Roberts* case, observing that the alternative test utilized by the majority was unduly complicated and would lead to inconsistent results. *Id.* at 611–12. Under Judge Weis' simplified approach, if the state Blue Sky law and the federal securities statute express parallel policies, the court's analysis need proceed no further and the limitations provision contained in the Blue Sky law should be applied to the federal claim. *Id.* In this manner, determination of the applicable statute of limitations would not be left to the vagaries of the particular federal claim alleged and could be predicted in advance with some measure of confidence. *Id.*

Because of the narrow ground upon which both *Roberts* and *Biggans* were decided and the lack of a firm consensus as to

the proper guidelines to be applied, it is difficult to predict what effect these opinions hold for the circumstances posed by the present complaint. Some limited guidance, however, can be extrapolated from the various opinions. It is safe to assume that the Third Circuit adheres to the rudimentary principle that when alternative limitations periods are supplied by state law, the court must select that state statute of limitations which best comports with the substantive federal policies advanced by Rule 10b–5. Likewise the Court of Appeals has indicated that the concurrent operation of the federal and state securities statutes makes the Blue Sky statute of limitations in most cases the logical candidate for regulating 10b–5 claims. This presumption, however, is subject to one significant exception. If the underlying state Blue Sky law does not afford a civil damage action to remedy the behavior challenged by the 10b–5 claim and the plaintiff would be relegated to a common law fraud action for state relief, the courts must apply the fraud limitations provision to the 10b–5 action. *Accord Sharp v. Coopers & Lybrand*, 649 F.2d 175, 191–92 (C.A.3, 1981); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 894 (C.A.5, 1979). Beyond these constraints, however, the district courts are free to fill the interstices left open by Congress' failure to enact a limitations provision for remedies implied under the securities laws.

The provisions of the Delaware Blue Sky law are strikingly similar to the Pennsylvania and New Jersey statutory provisions discussed in *Biggans* and *Roberts*; all three statutes are drawn in part from the Uniform Securities Statute. Like the Pennsylvania Act, § 7303 of the Delaware law substantially tracks the language of Rule 10b–5, but the remedies expressly provided by the statute to redress violations of § 7303 are limited to injunctive relief, and, if willfulness is proved, criminal prosecution. *See* 6 *Del.C.* §§ 7320, 7322. Similarly, the only civil damage remedy available to a private party under the Delaware Blue Sky law is contained in § 7323, which, like the Pennsylvania and New Jersey civil liabilities provisions, is modeled on § 12(2) of the Securities Act, and provides only for an action of rescission by a defrauded seller or purchaser.[7] The civil liabilities provision of the Delaware statute, moreover, also was not designed to preempt existing common law remedies. 6 *Del.C.* § 7323(h).

Although the three state securities statutes share many common denominators, however, the facts before the Court differ from those presented in *Biggans* and *Roberts* in one significant respect. While the federal plaintiffs in those two cases could not have brought a civil damage action under the pertinent liabilities provision of the state Blue Sky law, the plaintiffs in this case, as defrauded purchasers, *have* an action for rescission against the defendants under § 7323 of the Delaware statute.[8] Thus the Court must resolve the question left unanswered in the *Roberts* case—where a plaintiff claiming violations of Rule 10b–5

---

7. Section 7323 provides in pertinent part:

 (a) Any person who:

 \* \* \* \* \* \*

 (2) Offers, sells or purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in the light of circumstances under which they are made, not misleading (the buyer or seller not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying or selling the security from or to him, who may sue either at law or in equity to recover the consideration paid for the security, together with the interest at the legal rate from the date of payment costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Although § 7323 and the corresponding Pennsylvania and New Jersey civil liabilities provision are patterned on § 12(2) of the Securities Act, § 7323 and its Pennsylvania analogue apply to defrauded sellers as well as purchasers, whereas § 12(2) and the New Jersey provision apply only to defrauded purchasers.

8. In fact, plaintiffs have alleged claims under both §§ 7303 and 7323 of the Blue Sky law (Count Two) and under common law fraud (Count Four) based on the same operative facts recited in Count One. (D.I. 1, ¶¶ 41–42, 45–51.)

could bring a state action under both the civil liabilities provision of the Blue Sky law, which is modeled on § 12(2) of the Securities Act, and common law fraud, which corresponding limitations period—the Blue Sky statute of limitations or the common law fraud limitations period—best effectuates the substantive policies advanced by Rule 10b–5.

■ After examining the competing arguments, the Court finds that application of the Blue Sky limitations provision to plaintiffs' 10b–5 claims reflects the more sensible approach. Although § 7323 of the Blue Sky law and Rule 10b–5 obviously are not co-extensive, the two provisions bear a marked similarity in purpose and substance sufficient to overcome any technical differences. *See Morris v. Stifel, Nicolaus & Co., supra,* 600 F.2d at 146. The language of § 7323 parallels that of Rule 10b–5(b). In addition, while the remedy provided by § 7323 is not as broad as that provided by 10b–5, both federal and state provisions were specifically designed to regulate the same conduct and to redress the same evils; both are directed at deterring fraud in the offer or sale of securities and plainly encompass similar goals of encouraging full disclosure of information. *Id.* at 143. In contrast, the concerns shared by actions based on Rule 10b–5 and common law fraud are far less congruent. Securities fraud is but a small subsection of the wide range of wrongful behavior generally proscribed by common law fraud. *See O'Hara v. Kovens,* 625 F.2d 15, 18 (C.A.4, 1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). Accordingly, the Blue Sky law best comports with the policies advanced by Rule 10b–5 and provides the cause of action most substantively analogous to that proffered by Rule 10b–5.

Plaintiffs argue, however, that the essential elements of a 10b–5 action are more identical to a common law fraud suit and specifically point to the necessity of proving scienter in both fraud and 10b–5 actions as the critical factor supporting application of the limitations period for common law fraud. (D.I. 20 at 12.) It is true that liability under § 7323 may be predicated on mere negligence while proof of some element of scienter is required to establish actionable common law fraud.[9] The Court believes, however, that selection of the appropriate statute of limitations cannot turn on such simplistic distinctions. The ultimate question facing the Court is which state limitations period best effectuates the federal policies underlying Rule 10b–5. *See Morris v. Stifel, Nicolaus & Co., Inc., supra,* 600 F.2d at 144. In their quest to satisfy this criteria, the vast majority of courts has looked to the local statute which bears the closest resemblance to Rule 10b–5. This "resemblance test," however, is merely a guide to ascertain the state limitations period most consonant with federal law and should not be read to compel a perfect matching of the elements comprising the underlying state cause of action on the one hand and the claim brought under Rule 10b–5 on the other. Instead, where there is a substantial and distinct commonality of purpose between the federal and local securities provisions, this factor weighs heavily in favor of applying the Blue Sky limitations provision to the 10b–5 claims. *Id.* All that need further be demonstrated is that the plaintiff would have an action under the Blue Sky law and that this action is roughly equivalent to the claim brought under Rule 10b–5. If both factors are met, the Blue Sky provision is most substantively analogous to the 10b–5 claim and the limitations period applicable to that state cause of action can be said to best effectuate the policies advanced by Rule 10b–5.

---

**9.** Under § 7323, the defendant must sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission giving rise to the plaintiff's claim. In a suit for common law fraud, the plaintiff must prove that the defendant made a false representation of material fact which was known by the defendant to be false or was made in reckless indifference to the truth. *See In re Brandywine Volkswagen, Ltd.,* 306 A.2d 24, 27 n.5 (Del.Super.1973); *Twin Coach Co. v. Chance Vought Aircraft, Inc.,* 2 Storey 588, 163 A.2d 278, 284 (Del.Super.1960).

The Court finds that the two year statute of limitations provided by § 7323 of the Blue Sky law will be applied to measure the timeliness of the 10b–5 claims contained in Count One of plaintiffs' complaint.

## B. *"Purchases" of Securities*

Although the Court has found that the appropriate statute of limitations is provided by the Blue Sky law, it must still determine when the plaintiffs' cause of action accrued before it can assess the timeliness of the 10b–5 claims contained in Count One. The parties agree that under Rule 10b–5, which proscribes fraud "in connection with the purchase or sale of any security," the plaintiffs' 10b–5 cause of action accrued at the time of "purchase" of the limited partnership interests. The parties differ, however, on the interpretation of the word "purchase" as that term is used in Rule 10b–5. Defendants contend that each plaintiff "purchased" his securities at the time that he initially entered into the limited partnership agreement in November or December of 1977, and accordingly that the two year statute of limitations had run on each purchase by April 1, 1980, the date on which this suit was filed. (D.I. 21 at 17.) In response, plaintiffs argue that under the opinion of the Seventh Circuit in *Goodman v. Epstein*, 582 F.2d 388 (C.A.7, 1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), a "purchase" under Rule 10b–5 occurs whenever the purchaser of a security is required to make an "investment decision." (D.I. 20 at 17.) Because the plaintiffs were required to contribute sums of money toward the purchase price of the limited partnership interests at regular intervals, until approximately two months prior to the filing of the complaint, plaintiffs contend that each contribution represented an "investment decision" or "purchase" and that the claims alleged in Count One are timely. (D.I. 20 at 19.)

In *Goodman*, the purported 10b–5 violation arose out of the sale of limited partnership interests in a land development scheme. After a jury trial which resulted in a favorable verdict for the defendants, the plaintiffs appealed and assigned as error certain of the trial court's instructions, including those relating to the time of "purchase" of the security. 582 F.2d at 387–88. The trial court had instructed the jury that the "purchase" of each plaintiff's securities occurred when the plaintiff was first committed or obligated by agreement to acquire the security, viz., at the time the limited partnership agreement was executed, even though the plaintiff was required to make subsequent capital contributions to the partnership upon call by the General Partners at any time. Because the agreement was not executed within the state statute of limitations period, this instruction had the practical effect of eliminating any chance of the plaintiffs obtaining a favorable verdict on their claims. *Id.* at 409.

In remanding the case for a new trial, the court of appeals observed that in order to effectuate adequately the remedial purposes of the securities laws, the term "purchase" must be liberally construed. *Id.* at 410. If the time of purchase was deemed to be solely that point at which the limited partnership agreement was executed, the obligation of the general partners to furnish information to the purchasers under the federal securities laws would cease after that date. *Id.* The purchasers of the limited partnership interests thus would not be entitled to material information concerning their investments after consummation of the agreement, even though the agreement contemplated a continuing relationship in which the purchasers were required to make additional investment decisions. This resulting dilemma, the court found, would not achieve the avowed goal of insuring fundamental fairness in the securities marketplace. *Id.* at 412–13. Accordingly, the court ruled that when an investment decision remains to be made at the time of a call for capital contribution pursuant to a limited partnership agreement, the subsequent tender of the money by each limited partner constitutes a separate "purchase" of a security. Any material misrepresentations or omissions made at the time the money was tendered, therefore, would be "in

connection with the purchase or sale" of a security, as required by Rule 10b–5. *Id.* at 414.

The court further indicated that in determining whether an investment decision remains to be made at the time of a capital call, several factors must be considered. Chief among these is whether the plaintiff would have any legal recourse to alter or avoid its obligation to comply with the capital call. *Id.* at 412–13. In this case, the plaintiffs listed six different options available to them upon receipt of the capital call, including a possible sale of their limited partnership interests or an action to dissolve the partnership and seek a return of the contributions. *Id.* at 398. The court acknowledged that these alternatives, if proved, would potentially create a whole series of investment decisions each time a call for capital was made, but that this issue must be resolved in the first instance by the trier of fact. *Id.* at 413.

Defendants in this action do not seriously dispute the *Goodman* holding and the Court fully subscribes to the well reasoned legal analysis of that opinion. *Accord Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 812–14 (C.A.9, 1981); *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278, 1286–87 (N.D.Ill.1981). Defendants argue, however, that the plaintiffs' periodic contributions of sums of money amounted to nothing more than fixed installment payments on promissory notes and did not require discretionary investment decisions. (D.I. 21 at 19.) Accordingly, defendants urge the Court to reject plaintiffs' contention that a "purchase" occurred each time that they made an additional payment of money on their previously incurred obligations. (D.I. 21 at 19–20.)

■ Defendants have misperceived the function of the Court at this stage of proceedings. It is the prerogative of the trier of fact to resolve controverted issues raised by the pleadings. On a motion to dismiss,

the Court must determine only "whether taking the allegations of the complaint as true, and viewing them liberally giving plaintiffs the benefit of all inferences which fairly can be drawn therefrom, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (C.A.3, 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (citations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ The complaint in this case alleges that each plaintiff tendered a portion of the purchase price of the limited partnership interests to the defendants at the time that the limited partnership agreement was signed. (D.I. 1, ¶¶ 31, 32.) The agreement provided for the payment of additional sums of money on May 1, 1978, February 1, 1979, February 1, 1980 and February 1, 1981, each installment of which was secured by an irrevocable letter of credit. (D.I. 1, ¶ 32.) The plaintiffs paid the installments due and owing on the securities through the February, 1980 payment, which was tendered two months before the complaint was filed. (*Id*). From the time that the limited partnership interests were first offered to the plaintiffs through this final payment, however, the defendants purportedly made untrue statements of material facts and otherwise engaged in fraudulent and deceptive conduct designed to conceal from the plaintiffs the weak financial posture of their investments. (D.I. 1, ¶¶ 33–35.) As a result, the complaint alleges that the plaintiffs *inter alia* incurred substantial losses arising out of the payment of additional installment moneys and out of their failure to exercise rights available to them at all relevant times under Paragraph 16 of the limited partnership agreement to remove the general partners for cause.[10] (D.I. 1, ¶ 39.) The Court cannot conclude that

---

10. Besides authorizing the limited partners to remove the general partners for cause, Paragraph 16 of the limited partnership agreement also authorized the limited partners to amend the partnership agreement, dissolve the part-

nership or continue the business of the partnership with a substituted general partner. (D.I. 13, Appendix 1.) These options are similar to those alleged by the defrauded limited partners in the *Goodman* case.

these allegations, and all inferences which can fairly be drawn therefrom, do not adequately state a claim of separate and independent securities purchases under the *Goodman* framework. Accordingly, the allegations are sufficient to withstand the motion to dismiss the 10b–5 claims contained in Count One, and, this portion of defendants' motion will be denied.

### C. *Equitable Tolling Doctrine*

■ Although the pertinent statute of limitations for 10b–5 actions is supplied by state law, federal law determines not only when the cause of action accrues, but also when the limitations period commences to run. *See Biggans v. Bache Halsey Stuart Shields, supra*, 638 F.2d at 607, n.3; *Phillips v. Levie*, 593 F.2d 459, 462 (C.A.2, 1979); *Cook v. Avien*, 573 F.2d 685, 694–95 (C.A.1, 1978); *Hudak v. Economic Research Analysts, Inc., supra*, 499 F.2d at 1000, n.5. Under the federal doctrine of fraudulent concealment, the statute of limitations is tolled when the party injured by the fraud "remains in ignorance of it without any fault or want of diligence on his part." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Once the plaintiff has actual knowledge of the fraud, however, or in the exercise of reasonable diligence should have discovered the fraud, the statute of limitations begins to run. *Cook v. Avien, supra*, 573 F.2d at 694–95; *Stull v. Bayard*, 561 F.2d 429, 432 (C.A.2, 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978).

Plaintiffs assert as a separate and independent ground for denying defendants' motion to dismiss the 10b–5 claims in Count One that the statute of limitations was tolled until April, 1979, less than one year before plaintiffs' complaint was filed. (D.I. 20 at 15–16.) The complaint alleges in conclusory fashion that the plaintiffs had no knowledge of the untrue or misleading statements made in connection with the sale of the limited partnership interests at any time prior to April 5, 1979, and could not have discovered the true facts before this time in the exercise of reasonable dili-

gence. (D.I. 1, ¶ 38.) Such cursory allegations ordinarily are insufficient to satisfy the pleading requirements necessary to raise the issue of fraudulent concealment. *See Hupp v. Gray*, 500 F.2d 993, 996 (C.A.7, 1974); *cf. Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 292 (W.D.N.Y.1977); *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975).

■ A review of the allegations contained in the complaint, however, which must be accepted as true for purposes of defendants' motion to dismiss, indicates that the plaintiffs could not have reasonably been alerted to the alleged fraud before January, 1979, approximately 15 months before suit was filed. The complaint alleges numerous instances during 1978 in which certain of the defendants either met or communicated with the plaintiffs about their common investments and on none of these occasions did the defendants reveal the deteriorating financial condition of Wilmington House Associates, the limited partnership in which plaintiffs held their interests. (D.I. 1, ¶ 35.) On several occasions, moreover, up until late December, 1978, the plaintiffs were affirmatively advised that projected losses were "right on target," when in fact these losses already were far in excess of those predicted in the private offering memorandum. (*Id.*) It was not until January, 1979, when Lancaster Court Associates, the sole investment of Wilmington House Associates, filed a Chapter XII proceeding under the bankruptcy laws that plaintiffs arguably received "inquiry notice" of the defendants' fraudulent conduct and the obligation to make "reasonable inquiries" was triggered. (D.I. 1, ¶ 35(f)(v).) *See Cook v. Avien, supra*, 573 F.2d at 696. This date was well within the two year limitations period provided by the Delaware Blue Sky law. Thus the allegations of equitable tolling are further grounds for denying the defendants' motion to dismiss the 10b–5 claims contained in Count One.

### III. *Statute of Limitations for § 12(2) and § 15(c)(1) Claims*

Besides alleging a violation of Rule 10b–5, Count One also alleges that the defend-

ants have violated § 12(2) of the Securities Act and § 15(c)(1) of the Exchange Act based on the same facts recited in support of the 10b–5 claims. Defendants have moved to dismiss the § 12(2) and § 15(c)(1) claims on the ground that they likewise are barred by the pertinent statutes of limitations.

Unlike Rule 10b–5, Congress provided express limitations periods for causes of action brought under § 12(2) and § 15(c). Under § 13 of the Securities Act, an action based on § 12(2) must be brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. In no event may any liability created under § 12(2) be enforced more than three years after the sale of the security. *Id.* Under § 29(b) of the Exchange Act, an action based on § 15(c)(1) must be brought "within one year after discovery that such sale or purchase involves such violation and within three years after such violation." 15 U.S.C. § 78cc. Under prevailing case law, "discovery" as that term is used in § 29(b) has been interpreted to mean either actual knowledge of the fraud or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the fraud. *See Goldenberg v. Bache & Co.*, 270 F.2d 675, 681 (C.A.5, 1959); *Lorenz v. Watson*, 258 F.Supp. 724, 735 (E.D.Pa.1966). Thus the standards for assessing the timeliness of claims brought under § 12(2) of the Securities Act and § 15(c)(1) of the Exchange Act are virtually equivalent.

Defendants argue that the complaint fails adequately to allege that plaintiffs could not have discovered the purported misstatements and omissions through the exercise of reasonable diligence prior to April 1, 1979, one year before suit was filed. (D.I. 13 at 12.) Defendants argue, moreover, that on the face of the complaint, it is apparent that plaintiffs could have discovered the fraud as early as January, 1979 if they had made the reasonable inquiries required under the respective limitations periods. (*Id.*) Accordingly, defendants contend that the Court must dismiss the claims

in Count One based on § 12(2) of the Securities Act and § 15(c)(1) of the Exchange Act.

 The reasonable diligence standard requires a plaintiff to file suit when the possibility of fraud should have been apparent. *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 554 (S.D.N.Y.1977). Commencement of the statutory time period cannot await the plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (C.A.2, 1970). Instead, the period begins to run when the plaintiff has enough facts to be on notice of the potential claim. *Id.* Moreover, "the exercise of reasonable diligence requires an investor to be reasonably cognizant of financial developments relating to his investment, and mandates that early steps be taken to appraise those facts which come to the investor's attention." *Cook v. Avien, supra*, 573 F.2d at 695. A determination of whether an investor has exercised reasonable diligence will turn on *inter alia* the nature of the misleading statements or omissions alleged, the opportunity to detect the fraud and the subsequent actions of the parties. *Id.* at 696–97. Resolution of this issue, however, must be made by the jury after full exposition of the underlying facts and is inappropriate for summary disposition by the Court. *Kubik v. Goldfield*, 479 F.2d 472, 477 (C.A.3, 1973); *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890, 903 (D.Me.1971).

 Although the Court is without power to decide the due diligence question as a matter of law, it is obligated to insure that the issue has been properly pleaded. Generally, when the very statute which creates the cause of action contains a limitations provision, the plaintiff must plead sufficient facts to demonstrate that he is not barred from pursuing his claims. *Cook v. Avien, supra*, 573 F.2d at 695, *quoting* 3 L.Loss, Securities Regulation 1785 (2d ed. 1961); *Woods v. Homes & Structures of Pittsburg, Kansas*, 489 F.Supp. 1270, 1289 (D.Kan.1980); *Brick v. Dominion Mortgage & Realty Trust, supra*, 442 F.Supp. at 291–92; *In re Caesars Palace Securities Litiga-*

*tion,* 360 F.Supp. 366, 377 (S.D.N.Y.1973). The courts have held that in order properly to allege a claim under § 12(2), the complaint must set forth the time and circumstances of the discovery of the fraudulent statements, the reasons why discovery was not made earlier if more than one year has elapsed since the fraudulent conduct occurred, and the diligent efforts which plaintiff undertook in making or seeking such discovery. *Brick v. Dominion Mortgage & Realty Trust, supra,* 442 F.Supp. at 292; *Kroungold v. Triester, supra,* 407 F.Supp. at 419. Because of the congruity in the limitations provisions for § 12(2) and § 15(c), the Court finds that these elements must also be pleaded for claims brought under § 15(c).

Plaintiffs have failed to plead sufficient facts to conform to the requirements outlined above. Although the complaint alleges that discovery of the fraud could not have been made prior to April 5, 1979 at the earliest, the actual time of, and circumstances leading up to, the discovery of the defendants' purported deceitful conduct are nowhere elucidated. Moreover, as the Court has previously recognized, while discovery of the fraud could not likely have been made before January, 1979, certain events occurred shortly after that date which should have placed the plaintiffs on "inquiry notice" of a potential claim and imposed on them a duty to investigate the economic status of their securities. In January, 1979, Lancaster Court Associates, the limited partnership which was the sole investment of Wilmington House Associates, filed a Chapter XII proceeding under the federal bankruptcy laws. (D.I. 1, ¶ 35(f)(v).) In addition, in February, 1979, plaintiffs were informed that Lancaster Court Associates had commenced a $200,000 lawsuit against the seller of an apartment complex for failure to maintain that property pursuant to the contract of sale. (D.I. 1, ¶ 35(f)(i).) Plaintiffs were aware that the apartment complex was owned and operated by Lancaster Court Associates and was its sole asset. Although the complaint alleges that plaintiff, John Hill, was assured by one of the defendants in February, 1979, that the Chapter XII proceeding would have no effect on the plaintiffs' investments in Wilmington House Associates (D.I. 1, ¶ 35(f)(v)), the bankruptcy proceeding and the purported Lancaster Court suit nonetheless should have aroused some suspicion as to the economic vitality of plaintiffs' limited partnership interests. It was thus incumbent upon plaintiffs to allege in more particular detail the reasons why discovery of the fraud was not made in the period between January and April, 1979, and what diligent efforts each of the plaintiffs undertook to appraise those facts which came to their attention concerning the financial difficulties encountered by Lancaster Court Associates.

Plaintiffs' claims under § 12(2) of the Securities Act and § 15(c)(1) of the Exchange Act contained in Count One will be dismissed unless plaintiffs within twenty days file an amended complaint which properly pleads the issue of due diligence, as outlined in this opinion. *See Brick v. Dominion Mortgage & Realty Trust, supra,* 442 F.Supp. at 292; *Ingenito v. Bermec, supra,* 376 F.Supp. at 1186; *McMerty v. Burtness,* 72 F.R.D. 450, 453 (D.Minn.1976).

IV. *Motions to Dismiss Under Rule 12(b)(6)*

A. *Counts Eight, Sixteen and Eighteen*

Defendants have also raised a wide assortment of challenges to Counts Eight, Eighteen and portions of Count Sixteen of the complaint on the ground that the relevant allegations of each count collectively fail to state a cause of action under Rule 12(b)(6), F.R.Civ.P. As the Court has previously observed, it is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102; *Jamieson v. Robinson,* 641 F.2d 138, 141 (C.A.3, 1981); *Matter of Kearney Chemicals, Inc.,* 468 F.Supp. 1107, 1109 (D.Del.1979); *Athletes Foot of Delaware v. Ralph Libonati Co.,* 445 F.Supp. 35, 50

(D.Del.1977). Although it may appear on the face of the pleadings that a recovery is very remote or unlikely, the court cannot deprive the plaintiff of the opportunity to offer evidence to support his claims unless this stringent test is met. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are granted only in the rarest of circumstances. 5 Wright & Miller, Federal Practice and Procedure, § 1357 at 598.

■ After carefully scrutinizing the complaint, the Court finds that the pertinent allegations of Counts Eight, Sixteen and Eighteen, and all favorable inferences drawn therefrom, are wholly sufficient to support a cause of action under the applicable antifraud provisions of the securities laws. Moreover, the Court also concludes that the substantive charges of these counts are of sufficient clarity to permit the defendants to answer the allegations contained therein and to prepare intelligently for discovery. *In re Caesars Palace Securities Litigation, supra,* 360 F.Supp. at 389. Accordingly, defendants' motion to dismiss these counts will be denied.

### B. *Rule 15b10–3 Claims in Count Sixteen*

Count Sixteen also alleges that defendants Lee P. Der and D & S Financial, Inc., violated § 15(b)(9) of the Exchange Act and Rule 15b10–3 promulgated thereunder in connection with their sale of limited partnership interests to certain of the plaintiffs. Rule 15b10–3, by its terms, applies only to "nonmember brokers or dealers" and any "associated persons." The term "nonmember brokers or dealers" is defined under SEC regulations as "any broker or dealer registered under Section 15 of the Act, who is not a member of a national securities association registered with the Commission under Section 15A of the Act." Rule 15b10–1(a); 17 C.F.R. § 240. 15b10–1(a). The term "associated person" is defined as *inter alia* "any natural person directly or indirectly controlling or controlled by such nonmember broker or dealer." Rule 15b10–1(b); 17 C.F.R. § 240.15b10–1(b).

■ Defendants contend that at all times relevant to the allegations of Count Sixteen, D & S Financial, Inc., was a broker-dealer registered under Section 15 of the Exchange Act, and a member of the National Association of Securities Dealers, an association registered with the SEC under Section 15(a) of the Exchange Act since 1939. (D.I. 13 at 24–25.) Accordingly, defendants argue that D & S Financial, Inc., could not properly be considered a "nonmember broker or dealer" within the purview of Rule 15b10–3. Correspondingly, Lee P. Der, as principal stockholder of D & S Financial, Inc., also could not be considered an "associated person" under that rule. (*Id.*) Defendants have supported this contention with an affidavit from Lee P. Der (D.I. 13, Appendix), and the Court will therefore treat the motion to dismiss as one for summary judgment in accordance with the provisions of F.R.Civ.P. 12(b). Because plaintiffs have failed to submit any opposing affidavits or otherwise attempt to refute or deny the facts set forth in the Der affidavit, the Court will enter summary judgment in defendants' favor on this issue under F.R.Civ.P. 56(e). *See Tilden Financial Corp. v. Palo Tire Ser., Inc.,* 596 F.2d 604, 607–608 (C.A.3, 1979); *Tunnell v. Wiley,* 514 F.2d 971, 976 (C.A.3, 1975).

### V. *Punitive Damages*

As a final challenge to the complaint, defendants argue that plaintiffs are not entitled to punitive or exemplary damages under the federal securities laws and that the requests for such damages contained in Counts One, Eight, Sixteen and Eighteen must be dismissed.

■ In *Straub v. Vaisman & Co., Inc.,* 540 F.2d 591 (C.A.3, 1976), the Third Circuit flatly held that section 28 of the Exchange Act, which limits the award of a defrauded party suing under that Act to "actual damages," bars the recovery of punitive or exemplary damages. *Id.* at 599; *accord Gould v. American Hawaiian S.S. Co.,* 535 F.2d 761, 781 (C.A.3, 1976); *Establissement Tom-*

*is v. Shearson Hayden Stone*, 459 F.Supp. 1355, 1363 (S.D.N.Y.1978). *See also deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1229–32 (C.A.10, 1971); *Green v. Wolf Corp.*, 406 F.2d 291, 302–03 (C.A.2, 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Similarly, although the Court has already ruled that the plaintiffs' claims under § 17(a) of the Securities Act do not give rise to an implied right of action, this provision of the Securities Act could not support an award of punitive damages in any event. *See Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1283 (C.A.2, 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Accordingly, plaintiffs are foreclosed from seeking punitive damages and the pertinent portions of Counts One, Eight, Sixteen and Eighteen which request such relief will be dismissed.

An Order will be entered in accordance with this Opinion.