J. Donald **GOODWIN**

v.

**ELKINS & CO.,** et al.

No. 82–4069.

United States District Court, E.D. Pennsylvania.

March 25, 1983.

H. Donald Busch, Lewis Grafman, Busch & Schramm, Karen von Dreusche, Bala Cynwyd, Pa., for plaintiff.

David Doret, Robert A. Silverman, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM

FULLAM, District Judge.

The defendants have filed a Motion to Dismiss all of plaintiff's claims under the federal securities laws, pursuant to F.R.C.P. 12(b)(6), and a Motion to Stay and Compel Arbitration of all other claims asserted in the Complaint. The relevant facts are gleaned from the pleadings.

Plaintiff was a general partner in the brokerage firm of Elkins & Company, and a registered representative. He had been associated with that firm for more than 20 years when, in 1981, he became dissatisfied with the management policies of the firm, and announced his resignation as of October 1981. He was prevailed upon to withdraw his resignation and continue with the firm until at least March 31, 1982, so as to avoid undue prejudice to the firm. In February 1982, plaintiff was advised that it would be more convenient if his withdrawal from the firm were to take effect as of January 1, 1982. Plaintiff acquiesced in that suggestion, and his withdrawal from the firm was effectuated as if it had occurred on January 1, 1982. Plaintiff asserts that, in connection with the February agreement, plaintiff was falsely and fraudulently advised that no sale or merger of the firm was in contemplation; and that the defendants fraudulently concealed from plaintiff the fact that such negotiations were then actively being pursued. On March 17, 1982, the Elkins firm was purchased by and merged into Bache, Halsey, Stewart, in a transaction which was financially advantageous to the general partners of the Elkins firm. Plaintiff seeks to recover the difference between the amount paid to him upon his withdrawal (representing the value of his

interest calculated as of January 1, 1982) and the amount which would have been paid to him had his interest been valued as of the date originally agreed upon, March 31, 1982. Plaintiff also seeks punitive damages.

Plaintiff asserts violations of § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, and, under state law, breaches of fiduciary duty and common law fraud. In addition to invoking federal-question jurisdiction under the Securities Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331, plaintiff asserts that the parties are of diverse citizenship and that the amount in controversy exceeds $10,000, so that 28 U.S.C. § 1332(a) also establishes jurisdiction.

Paragraph 31 of the partnership agreement provides:

"Any controversy arising hereunder will be determined by arbitration pursuant to the Constitution and Rules of the Board of Governors of the New York Stock Exchange."

In addition, it is undisputed that, in his application to the New York Stock Exchange for allied membership, plaintiff agreed to abide by the constitution and rules of the Exchange, which require that "any controversy" between allied members is to be resolved by arbitration. New York Stock Exchange Constitution Article VIII, Section 1.

It is clear that, with the possible exception of plaintiff's 10(b) claims, all of plaintiff's claims fall within the arbitration provision. As stated by the Pennsylvania Supreme Court in *Waddell v. Shriber,* 465 Pa. 20, 30, 348 A.2d 96 (1975):

"When parties create a contractual relationship which includes a broad arbitration agreement, they intend to include within the scope of arbitration any dispute arising from the termination of that contractual relationship unless they clearly evidence a purpose to exclude such disputes."

On the other hand, claims of violation of the federal securities laws may be pursued in federal court irrespective of contractual provisions which would otherwise require arbitration, *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); and there is authority for the proposition that if there is substantial overlap and duplication between arbitrable and non-arbitrable claims, it is inappropriate to sever the arbitrable claims and require their submission to an arbitration which would be largely duplicative of the judicial proceeding. *See, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169 (11th Cir.1982); *Sawyer v. Raymond James & Associates, Inc.,* 642 F.2d 791 (5th Cir.1981). The crucial question, therefore, is whether, on the facts pleaded, plaintiff can establish liability under the federal securities laws.

Accepting as true the averments in plaintiff's Complaint, it is clear that material misrepresentations and concealment of material facts occurred. The question is whether these were "in connection with" the purchase or sale of a "security".

The seminal definition of a "security" is set forth in *SEC v. W.J. Howrey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946), namely, "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or third party." Plainly, the interest of a general partner in the partnership would not ordinarily fit within that definition, in view of the control and participation of the partner, and the expectation of profit generated in part by his own efforts. As the parties recognize, however, there is authority for the conclusion that, in some circumstances, "the mere fact that an investment takes the form of a general partnership or joint venture does not inevitably insulate it from the reach of the federal securities laws." *Williamson v. Tucker,* 645 F.2d 404, 422 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The *Williamson* court expressed the view that

"[if a partner has] irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular

expertise of the promoter or manager that he has no reasonable alternative to reliance on that person, then his partnership power may be inadequate to protect him from the dependence on others which is implicit in an investment contract." *Id.*, at 422–23.

But, as the court also noted,

"The federal securities acts will not protect [a partner] from a mere failure to exercise his rights." *Id.*, at 422.

■ That plaintiff was a general partner, with voting rights, and with the right to attend partnership meetings, and with the right of access to the partnership books and records, is undisputed. Notwithstanding plaintiff's earnest argument (suggesting that a fuller development of the factual background would disclose that plaintiff's minority interest, and non-membership on the management committee, and other circumstances, rendered him unable, as a practical matter, to exercise "real control"), I find it impossible to accept the contention that the partnership interest for which plaintiff was paid when he withdrew from the partnership can properly be deemed a "security" for purposes of § 10(b) of the Securities Exchange Act.

It is important to note that the few decisions in the courts of appeals and district courts suggesting that a general partnership interest may possibly constitute a "security" (the Supreme Court has never so held) all involved transactions more nearly resembling "investments" than the transactions here involved. When members of the general public are prevailed upon to invest in a joint real estate venture, for example, and when the fractional interests thus acquired are freely transferable to other members of the public, there is valid reason for holding that such investors are entitled to the protection of the federal securities laws notwithstanding the fact that the investors may technically have been cast in the role of general partners.

But a general partner in a brokerage firm is plainly in a very different position. Plaintiff devoted his entire working hours to the success of the venture; he did not simply "invest" in the enterprise and expect to derive profit solely from the efforts of others. His interest in the firm could not be sold or transferred.[1]

■ The gist of plaintiff's claims in this case is that he was induced by fraudulent misrepresentations and failures to disclose material facts to surrender his interest in the firm for less money than he should have received. That plaintiff bound himself to arbitrate this kind of dispute is abundantly clear. The policies of the federal arbitration statute are strong policies. The only impediment to compelled arbitration derives from the non-waiver provisions of the federal securities laws. But those provisions were enacted for reasons which do not apply to this plaintiff. As stated by the Supreme Court;

"This arrangement to arbitrate is a 'stipulation', and we think the right to select the judicial forum is the kind of 'provision' that cannot be waived under § 14 of the Securities Act.... While a buyer and seller of securities, under some circumstances, may deal at arms length on equal terms, it is clear that the Securities Act was drafted with an eye to the disadvantages under which buyers labor. Issuers of and dealers in securities have better opportunities to investigate and appraise the prospective earnings and business plans affecting securities than buyers. It is therefore reasonable for Congress to put buyers of securities covered by that Act on a different basis from other purchasers.

"When the security buyer, prior to any violation of the Securities Act, waives his right to sue in court, he gives up more

---

1. Both sides appear to assume that the transaction whereby plaintiff withdrew from the partnership and was paid the balance in his capital account, etc., pursuant to the applicable provisions of the partnership agreement, amounted to a "sale" of his interest in the firm. For present purposes, I shall make the same assumption; but I believe there is a serious question as to whether this is the kind of "sale" Congress had in mind when it enacted the Securities Exchange Act.

than would a participant in other business transactions. The security buyer has a wider choice of courts and venue. He thus surrenders one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary . . . .

"Two policies, not easily reconcilable, are involved . . . . Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act." *Wilko v. Swan,* 346 U.S. 427, 434–38, 74 S.Ct. 182, 186–88, 98 L.Ed. 168.

I have concluded that, as a matter of law, that the general partnership interest surrendered by plaintiff was not a "security" within the meaning of § 10(b). Plaintiff's claims under the federal securities laws will therefore be dismissed. As to the remaining claims, this action will be stayed, pending submission to arbitration.