**In re Lee P. DER, Debtor.**

**John T. HILL, et al., Plaintiffs,**

**v.**

**Lee P. DER, Defendant.**

**Bankruptcy No. 83–B–0448.
Adv. No. 83–01018B.**

United States Bankruptcy Court,
D. Maryland.

Dec. 28, 1989.

Supplement to Opinion Determining
Debt to be Nondischargeable
March 5, 1990.

Brian W. Shaughnessy, Shaughnessy, Borowski & Gagner, Washington, D.C., for debtor/defendant.

Douglas Clark Hollmann, Goldman, Kruger, Kovelant & Hollmann, Laurel, Md., for plaintiffs.

## MEMORANDUM OPINION DETERMINING DEBT TO BE NONDISCHARGEABLE

JAMES F. SCHNEIDER, Bankruptcy Judge.

The instant complaint to determine dischargeability of debt was brought by eight plaintiffs who lost money invested in several unsuccessful business enterprises which they claim the debtor promoted by fraud and misrepresentation. For the reasons stated, only the relief requested in Count 1 of the complaint will be granted; Counts 2 and 3 will be dismissed.

### FINDINGS OF FACT

1. THE DEBTOR/DEFENDANT:

Lee P. Der was the sole stockholder in D. & S. Financial, Inc., the securities broker-dealer which offered for sale to the plaintiffs limited partnership interests in three partnerships (Eagle Associates, Wilmington House Associates and Orgas, Ltd.), which the plaintiffs purchased. Mr. Der was also the majority stockholder in a corporation known as Der–Mas, Inc., a general partner in Eagle Associates; the sole stockholder of Lee P. Der, Inc., a general partner in Wilmington House Associates; and the majority stockholder in Lee–Mar, Inc., a general partner of Orgas, Ltd. The debtor's Chapter 7 bankruptcy case was commenced in this Court on March 14, 1983, by

the filing of an involuntary petition against him by Equitable Bank, N.A., Edward L. Blanton and Charles H. Flanders. An order for relief was entered on April 20, 1983.

### 2. THE PLAINTIFFS:

Descomp, Inc. is a Delaware corporation with its principal place of business at No. 3 Fairwinds Shopping Center, Bear, Delaware 19701.

Data Controls North, Inc. is a Maryland corporation with its principal place of business at No. 3 Fairwinds Shopping Center, Bear, Delaware, 19701.

John T. Hill is a resident of Delaware.

Virgil Scott, Jr. and Marie Scott are residents of Pennsylvania. Mr. Scott is the president, director and stockholder of Descomp, Inc., a vice-president and director of Data Controls North.

Thomas L. Ruger and Patricia A. Ruger are also residents of Pennsylvania. Mr. Ruger is secretary-treasurer, director and stockholder of Descomp, Inc., and Data Controls North.

James R. Stritzinger is a resident of Delaware.

### 3. THE LIMITED PARTNERSHIPS:

A. EAGLE ASSOCIATES was a limited partnership organized as a resyndication of a predecessor limited partnership known as Alma Coal Properties, Ltd. The business of both Alma and Eagle was the leasing of coal lands and the mining and sale of coal in Boone County, West Virginia. One limited partnership unit was purchased by Mr. Ruger individually and one unit jointly by Mr. and Mrs. Scott by subscription agreement dated November 2, 1978, at a price of $52,000 per unit. Mr. Stritzinger purchased 1½ limited partnership units at a price of $78,000 by subscription agreement dated December 18, 1978. Data Controls North, Inc., purchased eight limited partnership units at a price of $416,000 by subscription agreement dated November 2, 1978.

The plaintiffs paid for their shares in installments in the following amounts on the dates indicated:

**STRITZINGER**

| | |
|---|---|
| $ 18,000.00 | December 18, 1978 |
| 27,000.00 | June 1, 1979 |
| 33,000.00 | June 1, 1980 |
| $ 78,000.00 | |

**DCN**

| | |
|---|---|
| $ 96,000.00 | December 15, 1978 |
| 144,000.00 | June 1, 1979 |
| 176,000.00 | June 1, 1980 |
| $416,000.00 | |

**RUGER**

| | |
|---|---|
| $ 12,000.00 | December 15, 1978 |
| 18,000.00 | June 1, 1979 |
| 22,000.00 | June 1, 1980 |
| $ 52,000.00 | |

**SCOTT**

| | |
|---|---|
| $ 12,000.00 | December 15, 1978 |
| 18,000.00 | June 1, 1979 |
| 22,000.00 | June 1, 1980 |
| $ 52,000.00 | |

Complaint, paragraph 17.

Because of other charges and credits, the plaintiffs claim net losses in the following amounts:

| | |
|---|---|
| STRITZINGER | $ 73,757.68 |
| DCN | 358,278.86 |
| RUGER | 48,793.73 |
| SCOTT | 47,794.56 |
| TOTAL | $528,624.83 |

Exhibits to Plaintiff's Brief for Damages [P. 27].

B. WILMINGTON HOUSE ASSOCIATES was a limited partnership organized under the laws of the State of Maryland with its place of business located at 1517 Reisterstown Road, Pikesville, Maryland 21208. The purpose of the limited partnership was the sale to investors of limited partnership interests and the acquisition of a limited partnership interest in Lancaster Court Associates, a Delaware limited partnership. John T. Hill, Mr. and Mrs. Ruger, Mr. and Mrs. Scott and Descomp, Inc., invested in Wilmington House Associates by purchasing limited partnership interests. One partnership unit was purchased by Dr. Hill individually, one unit jointly by Mr. and Mrs. Scott and one unit jointly by Mr. and Mrs. Ruger at a price of $42,309 per unit by subscription agreement dated November

11, 1977. Descomp, Inc. purchased eight partnership units at a price of $338,472 by subscription agreement dated November 11, 1977.

C. ORGAS, LTD. was a Maryland limited partnership located at 1517 Reisterstown Road, Pikesville, Maryland 21208. Orgas was engaged in the leasing of coal lands and the mining and sale of coal in Boone County, West Virginia. John T. Hill purchased a 1½ limited partnership unit in Orgas, Ltd. at a price of $50,000 by subscription agreement dated April 5, 1979.

4. On April 1, 1980, the plaintiffs filed a suit in the U.S. District Court for the District of Delaware styled *John T. Hill, et al v. Lee P. Der, et al*, Case No. 80–146, seeking damages against Lee P. Der and others based upon alleged fraudulent conduct in the sale of securities to the plaintiffs in the form of limited partnership interests in Wilmington House Associates, Eagle Associates and Orgas, Ltd.

5. On April 20, 1982, the plaintiffs filed a second suit in the U.S. District Court for the District of Delaware styled *John T. Hill, et al v. Equitable Bank, N.A.*, Case No. 82–220, seeking damages against the former Equitable Trust Company based upon its alleged conspiracy with Lee P. Der and others to defraud the plaintiffs in connection with the sale of securities in Wilmington House Associates and Eagle Associates.

6. Neither of the foregoing lawsuits had come to trial before the plaintiffs filed the instant complaint to determine dischargeability of debt in this Court on November 4, 1983. By Order [P. 19] dated November 7, 1985, the instant action was stayed at the request of the plaintiffs pending the outcome of a trial by jury in *Hill v. Equitable Bank, N.A.* before the U.S. District Court for the District of Delaware. Upon the rendering of a verdict by the jury in favor of the Bank, the instant matter was scheduled for trial in October, 1988.

7. The instant complaint is 38 pages in length and contains three counts. Count 1 relates to the debtor's sales of securities in Eagle Associates to Data Controls North, Inc., Mr. and Mrs. Scott, Mr. Ruger and Mr. Stritzinger. Count 2 relates to the debtor's sales of securities in Wilmington House Associates to Descomp, Inc., Dr. Hill, Mr. and Mrs. Ruger and Mr. and Mrs. Scott. Count 3 relates to the debtor's sale of securities in Orgas, Ltd. to Dr. Hill only. Each of the three counts prays for a determination of nondischargeability of debts pursuant to Bankruptcy Code section 523(a)(2), (a)(4) and (a)(6).

8. Trial of the instant case occurred on October 3–6 and 11–13, 1988.

9. At the conclusion of the plaintiff's case, this Court granted a motion to dismiss as to Counts 2 and 3. Count 3 was dismissed because there was no evidence whatsoever adduced in support of it. Count 2 was dismissed because after taking all of the evidence in the light most favorable to the plaintiffs, the Court found a lack of materiality of the alleged fraudulent misrepresentations made by the debtor. The plaintiffs had alleged that at the time they invested in Wilmington House Associates, Mr. Der was the subject of investigations and complaints by the Securities and Exchange Commission ["S.E.C."] and by the National Association of Securities Dealers ["N.A.S.D."]. In dismissing Count 2, the Court held that even if the plaintiffs had contacted the S.E.C. and N.A.S.D. and had in fact learned about the investigations pending against Mr. Der, the nature of those investigations was so routine and unexceptional that such knowledge would not have dissuaded a reasonably prudent investor from purchasing securities from Mr. Der. This was borne out by the minor sanctions imposed by the regulatory bodies in response to his infractions of the rules.

10. On the other hand, Count 1 alleges certain facts which were proven at trial which the Court held established a case for nondischargeability of debt pursuant to § 523(a)(2)(B).

11. In order to induce Data Controls North, Inc., Mr. Ruger, Mr. Stritzinger and Mr. and Mrs. Scott to invest in Eagle Associates limited partnership, the debtor published a "private placement memorandum" dated September 25, 1978. In the memo-

randum, the debtor stated that the reason for the resyndication of Alma Coal Properties, Ltd., as Eagle Associates was because "... Alma's sole limited partner ... decided to withdraw from the operational side of the coal business." Private Placement Memorandum, plaintiffs' exhibit no. 100.

12. The foregoing statement was false and misleading. In actuality, the sole limited partner, Ward Development Company, had sued the debtor and others in the Circuit Court for Baltimore County on August 31, 1978, and had obtained an injunction against them.

13. Richard W. Ward, president of Ward Development Company, testified at the hearing on the instant complaint, that the Baltimore County suit alleged the failure of the debtor and his co-defendants to operate the coal mine properly and was filed to enjoin Equitable Bank's funding of a $300,000 letter of credit for which his company was liable. He further testified that he did not confer with Mr. Der before the suit was filed.

14. The suit was settled on December 13, 1978, by the defendants' agreement to stand liable to Ward Development Company for the full refund of its investment and the payment of costs incident to the suit. The debtor never disclosed this agreement to the plaintiffs, even though the agreement obligated the plaintiffs as investors and limited partners in Eagle Associates to assume Alma's liabilities to Ward Development Company and to Equitable Bank in the amount of approximately $500,000. Plaintiffs' exhibit no. 224. This was the true background to the resyndication of the coal mining venture in the guise of Eagle Associates.

15. Thomas Ruger testified that he sued Mr. Der on April 1, 1980 after he [Ruger] found out that Lancaster Court Associates had filed bankruptcy. He stated that on one of several visits to New York, he was told by Morton Taubman that Marvin Greenfield, one of the Lancaster Court insiders, had also filed bankruptcy, that these facts were known to Der and that Mr. Ruger and the other investors should never have gotten involved. Mr. Taubman told him that Greenfield's bankruptcy was pending at the time Lancaster Associates was being syndicated in 1977. The decision to invest in Eagle Associates was dependent upon the Wilmington House losses. Scott and Ruger needed to know how large their tax write-offs would be from the first investment, because the greater the loss in Wilmington, the lesser the need for losses to be sheltered by Eagle. Mr. Der told them that the losses were as projected, but they were actually much larger. The projected loss was $150,000, but turned out to be $356,000. After the case against Mr. Der was filed in the Delaware district court, the plaintiffs learned during discovery in October, 1982 about the existence of the Ward lawsuit. The whole time that the coal mine was operating at a loss, Mr. Der told the plaintiffs that it was operating at a profit.

16. The debtor knew the misrepresentations to be untrue but nevertheless by their publication to the plaintiffs induced them to invest in Eagle Associates as limited partners.

17. The debtor testified at the hearing on the instant complaint that the action filed against him and others in Baltimore County by Mr. Ward was a friendly suit, a "collusive suit" undertaken with his tacit consent in order to stall the Bank. The Court considers this explanation to be remarkable, extraordinary, and under the circumstances, completely unbelievable.[1]

## CONCLUSIONS OF LAW

### SUBJECT MATTER JURISDICTION, GRAVAMEN OF THE COMPLAINT

1. The instant complaint is within the subject matter jurisdiction of the bankruptcy court because the controversy is a core proceeding arising under[2] title 11 (specifi-

1. In addition, the claim that the Ward lawsuit was a collusive suit is ineffectual as a defense to the instant suit, as tending to show Mr. Der's complicity in a scheme which he endeavored to conceal from the plaintiffs.

2. *Collier* says that dischargeability complaints are among those administrative matters which

cally Section 523 of the Bankruptcy Code) involving determinations as to the dischargeability of particular debts, which this Court may hear and determine. 28 U.S.C. § 157(b)(1), (b)(2)(I) (Supp. V 1987).

2. The substance of the instant complaint is derived from the lawsuit filed by the plaintiffs against the debtor and others in the Delaware district court, styled *Hill v. Der*, 521 F.Supp. 1370 (1981), which alleged violations of Section 17(a) of the Securities Act of 1933 ["Securities Act"],[3] Section 10(b) of the Securities Exchange Act of 1934 ["Exchange Act"],[4] Rule 10b-5[5] promulgated under the Exchange Act and various state laws of Delaware and Maryland.

■ 3. The debtor's sale of limited partnership interests to the plaintiffs in the instant case involves the sale of securities to which the cited provisions of the Securities Act and the Exchange Act are applicable. *Luce v. Edelstein*, 802 F.2d 49, 55 (2nd Cir.1986); *Siebel v. Scott*, 725 F.2d 995, 998 (5th Cir.1984); *Bartels v. Algon-*

*quin Properties, Ltd.*, 471 F.Supp. 1132, 1146 (D.Vt.1979); *McGreghar Land Co. v. Meguiar*, 521 F.2d 822, 824 (9th Cir.1975); *Kroungold v. Triester*, 407 F.Supp. 414, 417 (E.D.Pa.1975). The leading case for the determination of whether a particular investment is a security is *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, 1251 (1946): "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *See also United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). *Cf. Power Petroleums, Inc. v. P. & G. Mining Co.*, 682 F.Supp 492 (D.Colo.1988); *Goodwin v. Elkins & Co.*, 558 F.Supp. 1375 (E.D.Pa.1983), *aff'd*, 730 F.2d 99 (3rd Cir. 1984); *Hirsch v. duPont*, 396 F.Supp. 1214 (S.D.N.Y.1975), *aff'd*, 553 F.2d 750 (2nd Cir. 1977); *Nor–Tex Agencies, Inc. v. Jones*, 482 F.2d 1093 (5th Cir.1973).[6]

■ 4. The Delaware district court held that there is no private right of action for

---

"arise in" a bankruptcy proceeding. This Court disagrees. *Cf.* 1 *Collier on Bankruptcy* ¶ 3.01[1][c][v] (15th ed. 1989).

3. Section 17(a) of the Securities Act provides:
(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
15 U.S.C. § 77q(a).

4. Section 10(b) of the Exchange Act provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—...
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any se-

curity not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b).

5. Rule 10b–5 provides:
It shall be unlawful for any reason, directly of indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

6. The definition of "security" contained in Section 101(43) of the Bankruptcy Code also includes "interest of a limited partner in a limited partnership." 11 U.S.C. § 101(43)(A)(xiii) (Supp. V 1987).

damages implied under Section 17(a) of the Securities Act, and therefore dismissed portions of the complaint which alleged such violations. *Hill v. Der,* 521 F.Supp. 1370, 1373–1378. The foregoing holding is the law of the case which is binding on this Court.[7]

5. The Delaware district court's dismissal of the Section 17(a) portions of the complaint left intact allegations of the violation of Section 10(b) of the Exchange Act and Rule 10b–5. In the case of *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the Supreme Court held that a private right of action for damages is implied under Section 10(b) and Rule 10b–5 even where "the transaction is not conducted through a securities exchange or an organized over-the-counter market." 404 U.S. at 10, 92 S.Ct. at 168, 30 L.Ed.2d at 133.

LIMITATIONS

6. In order for the instant complaint to overcome the debtor's defense that it is barred by limitations, this Court must determine (1) that the case of *Hill v. Der* was timely filed in the Delaware district court on April 1, 1980; and (2) that the instant complaint to determine dischargeability was timely filed in the bankruptcy court within the required time frame.

7. Bankruptcy Rule 4007(c) requires that complaints to determine dischargeability of debts pursuant to section 523(a)(2), (4) and (6) must be filed no later than 60 days after the first date scheduled for the Section 341 meeting of creditors in cases under Chapters 7 and 11. In the instant involuntary Chapter 7 case, the Order [P. 10] dated June 15, 1983 fixed September 9, 1983 as the date for the meeting of creditors and November 9, 1983 as the deadline for filing complaints to determine dischargeability of debts. The instant complaint was filed on November 4, 1983, within the specified 60–day period, and there-

fore the Court finds that it was filed timely under the rule.

8. In order to determine whether the Delaware district court complaint was timely filed, this Court must determine when the cause of action accrued and then must apply the applicable limitations period which governs the case.

9. Chief Judge Latchum held in *Hill v. Der,* 521 F.Supp. 1370 (D.Del.1981), that the plaintiffs' Rule 10b–5 claims were governed by the two-year statute of limitations period found in Section 7323 of the Delaware Blue Sky Law, 6 Del.C. § 7303 *et seq.* The court further stated that although the plaintiffs' 10b–5 cause of action accrued at the time they purchased the limited partnership interests, the term "purchase" might include each separate tender of money when the purchasers were required to make an "investment decision," citing *Goodman v. Epstein,* 582 F.2d 388 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1977). The court denied the motion to dismiss on this ground and on the alternative one that the federal "equitable tolling doctrine" tolls the statute of limitations while the defrauded party "remains in ignorance of [the fraud] without any fault or want of diligence on his part," citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 748 (1946). However, the court threatened to dismiss claims brought under Section 12(2) of the Securities Act and § 15(c)(1) of the Exchange Act unless the plaintiffs filed an amended complaint which properly pleaded the issue of due diligence.

*Hill v. Der, supra,* was decided September 17, 1981. On April 30, 1982, the plaintiffs filed suit in *Hill v. Equitable Trust Company* in the same court in which the suit against Mr. Der was pending, that is, the U.S. District Court for the District of Delaware. Over the next five years, that court issued five published opinions relating to limitations and other issues: *Hill v.*

---

7. In *Newman v. Prior,* 518 F.2d 97 (1975), the Fourth Circuit Court of Appeals held that Section 17(a) of the Securities Act gave rise to a private damage claim for the fraudulent sale of a security. In the case of *Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988), the same court overruled its earlier pronouncement and held that no such private right is implied in Section 17(a). *Newcome* was decided on December 16, 1988, while the instant decision was pending.

*Equitable Trust Co.,* 562 F.Supp. 1324 (1983) ["Hill I"]; *Hill v. Equitable Bank, N.A.,* 599 F.Supp. 1062 (1984) ["Hill II"]; *Hill v. Equitable Bank, N.A.,* 642 F.Supp. 1013 (1986) ["Hill III"]; *Hill v. Equitable Bank, N.A.,* 655 F.Supp. 631 (1987) ["Hill IV"]; and an amendment to the foregoing opinion found at 655 F.Supp. 653 (1987) ["Hill V"].[8]

In Hill I, decided May 3, 1983, the court held *inter alia* that because Rule 10b–5 stated no limitations period for implied private actions under section 10(b) of the Exchange Act, the limitations period applicable to a lawsuit alleging such violations of the Act "is determined by reference to the most closely analogous state law limitations period of the forum state, ... including any 'borrowing statute'." [Citations omitted] 562 F.Supp. at 1333. The decision held the claims of Pennsylvania plaintiffs Virgil Scott, Marie Scott, Thomas Ruger and Patricia Ruger to be governed by the one-to-three year statute of limitations contained in Maryland's Blue Sky law, Md. Corps. & Assns.Code Ann. § 11–703(f). The claims of Delaware plaintiffs Hill and Descomp, Inc., were held to be governed by Delaware's three-year statute of limitations for suits alleging common law fraud. The Court next determined that the 10b–5 cause of action relating to Wilmington House accrued at the time the securities were purchased on February 1, 1980, or early 1981, i.e. on the last dates when the buyers made payments and thereby exercised "investment decisions." According to this analysis, the claims of the Rugers and Scotts would be time-barred while those of Dr. Hill and Descomp would be timely. However, the Court did not hold that the claims were untimely as a matter of law but afforded the plaintiffs the opportunity to plead further facts to justify their delay in discovering the defendant's fraud. 562 F.Supp. at 1340. With respect to the Eagle Associates transaction, the court stated that "it is undisputed that all these plaintiffs [D.C.N., Virgil Scott, Marie Scott, Thomas Ruger, Patricia Ruger and James Stritzinger] paid in full for their Eagle lim-

ited partnerships on or before March 20, 1979." 562 F.Supp. at 1343. Therefore, assuming that the cause of action *were* governed by Delaware's three-year limitations for common law fraud, the complaint filed on April 30, 1982 was untimely, unless "equitable tolling" of the statute could be invoked to save it. The court reserved judgment on this issue pending further amendment of the complaint. With respect to James Stritzinger, the court held his claim to be timely based upon the "investment decision" analysis, because he had paid a later payment in June, 1979, and the court held his claim to be governed by the three-year statute of limitations. The court threw out the portion of the complaint based upon section 17(a) of the Securities Act and dismissed claims for punitive damages, adhering to its earlier decision in *Hill v. Der, supra.*

Hill II was decided on August 16, 1984, after the plaintiffs had filed an amended complaint on October 7, 1983 and the Bank had renewed its dismissal motion. The court declined to decide "[w]hether plaintiffs state a claim under the investment decision doctrine," 599 F.Supp. at 1074, because such a decision would be "factual." For purposes of denying the motion, the court assumed the plaintiffs' position to be correct that each installment payment represented a separate purchase. However, the court used April 1, 1980 as a "cut off" date for the employment of the doctrine, holding that payments which were admittedly made after the date the plaintiffs filed suit in *Hill v. Der* could not possibly be argued to postpone the date of the accrual of the cause of action in *Hill v. Equitable.* 599 F.Supp. at 1075. "The limitations periods applicable to plaintiffs' 10b–5 claims did not necessarily begin to run on the date on which the causes of action accrued." Again invoking the federal doctrine of "equitable tolling," the court held that there might be justification for filing suit out of time if the plaintiffs had been kept in the dark about the defendant's fraud. The court opined that at least by

---

**8.** Unbelievably, neither side in the instant complaint ever advised this Court of the existence of any of these published opinions, including that in *Hill v. Der, supra.*

April 1, 1980, the plaintiffs "should have suspected the possibility of fraud on the part of Equitable." 599 F.Supp. at 1077. However, because the question of the plaintiffs' exercise of reasonable diligence depended upon a factual inquiry, the court declined to decide the issue as a matter of law upon a motion to dismiss.

[Between the time Hill II and Hill III were decided, Judge Latchum signed an Order dated April 22, 1985, which stayed *Hill v. Der* pending the disposition of *Hill v. Equitable Bank* and the instant bankruptcy complaint.]

Hill III, which was decided on August 29, 1986, denied in part and granted in part Equitable's motion to dismiss charges in the complaint alleging violations of the Racketeering Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. §§ 1961–1968 (1988).

Hill IV, decided on January 9, 1987, dealt with Equitable's motion for summary judgment, which the court granted in part and denied in part. The court restated what it held in Hill I and II regarding applicable limitations statutes. 655 F.Supp. at 637–638. However, in a significant departure from past holdings, the court held for the first time that the "investment decision" doctrine did not apply to the case, based upon the terms of the Wilmington House and Eagle subscription agreements. The court found that the purchase or sale occurred on the first date that the parties entered into a "binding commitment" to purchase the limited partnership interests. Therefore, the plaintiffs' cause of action with respect to Wilmington House accrued in November, 1977 and as to Eagle in November and December, 1978. 655 F.Supp. at 638–640. However, the court held that "equitable tolling" would allow the complaint to survive the limitations attack on summary judgment. "Determining when the plaintiffs should have known about the fraud is a highly fact-based determination. In making this determination, the court must answer two basic questions: (1) when did the plaintiffs know enough to excite further inquiry; and (2) once plaintiffs knew enough to excite inquiry, was the

investigation plaintiffs undertook to uncover the fraud reasonable?" 655 F.Supp. at 641. The court answered the first question by suggesting that the earliest date of inquiry notice as to Equitable's fraud was the declaration of bankruptcy by Lancaster Court Associates in January, 1979, or in April, 1979 when the K–1 partnership income statements from Wilmington House and Eagle revealed heavy losses, or at least by April 1, 1980, when the plaintiffs filed suit in *Hill v. Der*. The court resolved the issue of reasonable diligence by construing the facts in the light most favorable to the plaintiffs, alluding to the mitigating factor of "the complicated nature of the fraudulent involvement of Equitable." 655 F.Supp. at 644. The plaintiffs had initiated correspondence with the Maryland State Banking Commissioner and the Federal Deposit Insurance Corporation. They received actual notice of the Bank's fraud in 1982. In summary, the court held "that the causes of action accrued in 1977 and 1978 but the running of the statute of limitations was tolled until 1982. As to the merits, the court dismissed all charges against the Bank relative to Wilmington House, because the Bank's misrepresentations were alleged to have occurred at a meeting on November 6, 1978, a year after the Wilmington House limited partnership units were purchased by the plaintiffs. 655 F.Supp. at 645. With respect to Eagle, however, the court opined that Equitable might be held vicariously liable for the acts of its employees. [The remainder of the opinion does not affect the instant complaint.]

Hill V was an amendment to the foregoing opinion which was added on March 2, 1987. In response to Equitable's motion to alter or amend the judgment of January 9, 1987, the court dismissed the rule 10b–5 claim of non-Delaware plaintiffs Thomas Ruger, D.C.N. and Virgil and Marie Scott relating to Eagle Associates, holding that their claims were time-barred by the absolute three-year limitation of the Maryland Blue Sky law. 655 F.Supp. at 653–654. The court followed Judge Ramsey's opinion in *Morley v. Cohen*, 610 F.Supp. 798 (D.Md. 1985) to the effect that the civil RICO claim

of the non-Delaware plaintiffs arising from the sale of Eagle limited partnerships was governed by the three-year Maryland limitations period for common law fraud; and not being time-barred, the civil RICO claim survived the dismissal of the underlying time-barred claim for securities fraud. 655 F.Supp at 655.

After Hill V was published, the outstanding counts in *Hill v. Equitable* went to trial before a jury, which rendered verdicts in favor of the Bank in the form of special interrogatories. Judgment was entered for the Bank on all counts remaining in the complaint and also on the Bank's counterclaim following a non-jury trial. The plaintiff noticed an appeal to the Third Circuit U.S. Court of Appeals.

While the appeal was pending, indeed after the appeal was argued, the Third Circuit handed down its decision in the case of *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.1988), which held that the limitations period properly applicable to implied private actions under Section 10(b) and Rule 10b–5 should be borrowed, not from similar state statutes, but from analogous limitations periods for express causes of action under the Exchange Act. Citing Sections 9(e) and 18(c) of the Exchange Act, the court inferred an identical limitations period for complaints "charging violations of section 10(b) and Rule 10b–5 of one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." 843 F.2d at 1550.

When the Third Circuit decided the appeal in *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3rd Cir.1988) ["Hill VI"] on July 14, 1988, it retroactively applied its decision in *Data, supra,* to limit the plaintiffs' time in bringing suit against Equitable to "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." 851 F.2d at 695. The court noted that the law on such limitations issues in the Third Circuit had been "in ferment." "If we look to the earlier date—June 1979 —when plaintiffs should have learned of facts pointing toward a claim for fraud, our precedent was even less settled," the court having then decided only the first of two cases which were published before the filing of *Hill v. Der* on April 1, 1980. 851 F.2d at 697. The court concluded that retroactive application would not be inequitable inasmuch as the identical limitations period under Maryland's Blue Sky law had been applied by the district court in Hill I to the claims of the non-Delaware plaintiffs. Citing *Fox v. Kane–Miller Corp.,* 542 F.2d 915, 917 (4th Cir.1976), the court held that the plaintiffs were on notice that the same Maryland limitations period had been applied to a private cause of action under Section 10(b) and Rule 10b–5 filed in the Federal district court in Maryland. 851 F.2d at 698.

10. The plaintiffs in the instant case are the same plaintiffs in *Hill v. Equitable Trust, supra.* There is no reason to apply a limitations period in this case different from that which the Third Circuit held applicable to these plaintiffs in the earlier suit. Moreover, this Court is bound to apply the same standard because the instant dischargeability action is derivative of the cause of action in Delaware and because the plaintiffs are precluded from challenging the issue of limitations which was fully litigated and has been decided against them in the earlier suit.

11. Therefore, the limitations period applicable to the instant cause of action for violations of Section 10(b) and Rule 10b–5 is that found in Sections 9(e) and 18(c) of the Exchange Act, namely "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Hill VI, supra,* at 695. "The one and three year provisions are cumulative, not alternative." *Morley v. Cohen,* 610 F.Supp. 798, 815 (D.Md.1985). According to this statement of the law, there is no equitable tolling applicable to the instant case. Thus, the instant cause of action was required to be brought within three years of the occurrence of the securities fraud violation and within one year after the plaintiffs knew or should have known about it through reasonable diligence.

REASONABLE DILIGENCE

■ 12. The cause of action accrued in the instant case upon the date of the sale of securities by the debtor to the plaintiffs. In the case of Wilmington House, that date was November, 1977. With respect to Eagle Associates, it was November, 1978. On those dates respectively the three-year limitations period began to run.

13. The question of when, in the exercise of "reasonable diligence" the plaintiffs in a security fraud action knew or should have known of the defendant's misrepresentation or omission is to be determined objectively based upon the factual record. *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205 (D.Minn.1987). *See also Hoffman v. Estabrook & Co., Inc.*, 587 F.2d 509 (1st Cir.1978); *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir.1978); *Fox v. Kane–Miller Corp.*, 398 F.Supp. 609 (D.Md.1975), *aff'd*, 542 F.2d 915 (4th Cir. 1976); *Johns Hopkins University v. Hutton*, 422 F.2d 1124 (4th Cir.1970).

14. The Court finds that the plaintiffs should have discovered the debtor's misrepresentations or omissions of material fact relating to Eagle no earlier than June, 1979, when the plaintiffs were made aware that the mining operation was incurring losses much greater than those which the debtor had projected and that Eagle had begun to contract out its mining operations. With respect to Wilmington House, the plaintiffs were first made aware of huge losses in April, 1979, when they received their K–1 tax forms. These facts should have put the plaintiffs on inquiry notice of the debtor's fraud. It is from these dates that the one-year feature of the statute of limitations began to run. Measuring one year from these dates, this Court finds that the *Hill v. Der* lawsuit was timely filed on April 1, 1980.[9]

SECURITIES FRAUD CLAIMS

15. "The legal standard governing affirmative disclosure duties under 10b–5 was established by the Supreme Court in *Chiarella v. United States*, 445 U.S. 222,

100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). In *Chiarella*, the Court held that a duty of affirmative disclosure arises only in instances where there exists a fiduciary relationship, or similar relationship of trust and confidence, between parties. *Id.* at 228, 100 S.Ct. at 1114." *Hill v. Equitable Bank, N.A.*, 599 F.Supp. 1062, 1080–1081 (D.Del.1984).

■ 16. As majority stockholder in and controlling person of Der–Mas, Inc., the general partner in Eagle Associates Limited Partnership, Lee P. Der owed the plaintiffs as limited partners the duty to deal fairly and truthfully with them and to represent their best interests. The debtor violated this duty. *Cf. Siebel, supra*, 725 F.2d at 1000, *Bartels, supra*, 471 F.Supp. at 1147.

■ 17. To prove a cause of action for damages for violation of disclosure provisions of section 10(b), the elements to be established include: (1) the violation must be in connection with the purchase and sale of a security; (2) claimed omissions and misrepresentations must be material in the context of the transactions at issue; (3) there must be a causal relationship between the alleged material omission and the alleged injury; and (4) there must be showing of scienter on the part of the alleged violator. *Dower v. Mosser Industries*, 488 F.Supp. 1328 (D.Pa.1980), *aff'd* 648 F.2d 183 (3rd Cir.1981).

18. To recover under a securities law claim based on Section 10(b) and Rule 10b–5, the plaintiff is required to prove defendant's omission of material facts with intent to deceive, and the plaintiff's reliance on the omission. *Frain v. Andy Frain, Inc.*, 660 F.Supp. 97 (N.D.Ill.1987).

■ 19. All of the foregoing elements set forth in Conclusions 15 and 16 *supra* have been proven to the satisfaction of this Court. Certainly the concealment and/or misrepresentation of the Ward lawsuit and its negative implications for investors was material. "A material fact is any informa-

---

**9.** The filing of suit on April 1, 1980 effectively tolled the running of limitations. The subsequent amendment of the suit to add additional grounds uncovered during discovery, i.e. the existence of the Ward lawsuit, was therefore not barred by limitations.

tion about which an average prudent investor ought reasonably to be informed before purchasing a security or if its existence or non-existence is a matter to which a reasonable [person] would attach importance in determining his [or her] choice of action in the transaction in question." *Kubik v. Goldfield,* 479 F.2d 472, 476, fn. 8 (3rd Cir.1973), *citing Johns Hopkins v. Hutton,* 422 F.2d 1124, 1128–1129 (4th Cir.1970) and *Gilbert v. Nixon,* 429 F.2d 348, 355–356 (10th Cir.1970). The causal connection between the misrepresentation and the injury was likewise clearly established. The settlement in the Ward lawsuit obligated the plaintiffs as limited partners to incur liabilities to the Bank and to Ward in the approximate amount of $500,000, which severely impaired the profitability of their investments. Mr. Der was in possession of the undisclosed information which he purposely concealed with intent to defraud the plaintiffs. (*Cf. Fox v. Kane–Miller Corp., supra,* 542 F.2d at 918–919, to the effect that intentional concealment, distinguished from nondisclosure, amounts to common law fraud and is so recognized in Maryland.)

■ 20. As a securities broker and an investments promoter, Mr. Der had a duty to disclose to prospective investors the existence of the lawsuit brought by Ward Development Company against Alma Coal Properties. This information would have been relevant and material to the plaintiffs as reasonably prudent investors, who relied to their detriment upon the private placement memorandum and who had a right to

rely upon it. The memorandum not only failed to disclose the lawsuit and the terms of its settlement, but it also *actually concealed the lawsuit* by claiming that Eagle Associates had been created because "Alma's sole limited partner ... decided to withdraw from the operational side of the business." The Court finds that Mr. Der's motivation in the creation of Eagle Associates was his desire to avoid disclosure of the significant liabilities of Eagle's predecessor as required by the rules of the S.E.C. The failure to disclose highly relevant and material information violated Section 10(b) of the Exchange Act and Rule 10b–5 and rises to the level of the commission of actual fraud.[10]

## NONDISCHARGEABILITY

■ 21. The amount found by the Court in Count 1 to be due and owing by the debtor to Mr. Ruger, Mr. Stritzinger, Mr. and Mrs. Scott and D.C.N. is in the total principal amount of $278,624.83 and is nondischargeable pursuant to Section 523(a)(2)(B) of the Bankruptcy Code.[11]

22. The debtor's fraudulent conduct in publishing the Eagle private placement memorandum renders the underlying debt nondischargeable under Section 523(a)(2)(B). The memorandum misrepresented the reason Eagle Associates was created and omitted and concealed the liability incurred by investors with the purpose of fraudulently inducing the plaintiffs to invest their funds. The Court finds that the plaintiffs reasonably relied upon these

---

**10.** In reaching this conclusion, the Court has excluded and totally disregarded the proffered "expert testimony" of Professor Joseph C. Long of the University of Oklahoma Law School to the effect that Regulation SK of the Securities and Exchange Commission is applicable to the private placement offering in this case, that buyers had no duty to investigate background facts behind the transaction, and that according to applicable standards, the lawsuit in the county circuit court should have been disclosed. Such opinion evidence, if considered, would permit the witness to usurp the function of the judge in making the ultimate decision in the case. *See Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 509 (2nd Cir.1977).

**11.** Section 523(a)(2)(B) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B) (Supp. V 1987).

highly relevant misrepresentations and that they had a right to do so. The omission and concealment of information in the private placement memorandum misrepresented the financial condition of Eagle Associates, which was greatly impaired by reason of the settlement of the Ward lawsuit.

23. Mr. Der testified that he acted upon advice of counsel in not disclosing the fact of the Ward lawsuit to prospective investors, specifically advice from two named Baltimore law firms. The Court notes that no witnesses from either firm appeared at trial to corroborate Mr. Der's testimony in this regard. However, Morton Taubman, an attorney and a business associate of Mr. Der, testified that he advised Mr. Der against making the disclosure. The Court finds such advice, if it were indeed given, to have been unreasonable and obviously incorrect. A business person of Mr. Der's education, sophistication and intelligence must have realized that such advice was improper. The Court does not accord any weight to the testimony of Mr. Taubman. He was not a disinterested, objective legal advisor, but rather Mr. Der's business associate, someone who participated with Mr. Der in the preparation of the private placement memorandum which was used to solicit investors.

24. The debtor was an insider of D. & S. Financial, Inc., the securities broker-dealer which offered and sold to the plaintiffs limited partnership interests in Eagle Associates. He was also an insider of Der–Mas, Inc., the general partner in Eagle Associates, and therefore, by inference, an insider of Eagle itself. [*See* the definition of an insider contained in 11 U.S.C. § 101(30)(A)(Supp. V 1987).] This satisfied the requirement in Section 523(a)(2)(B) that the false financial statement must relate to "the debtor's *or an insider's* financial condition." [Emphasis supplied.] 11 U.S.C. § 523(a)(2)(B)(ii) (Supp. V 1987).

25. The Court does not base its finding of nondischargeability upon Section 523(a)(4) [12] for violation of fiduciary duties. This is because there exists ample authority for the proposition that to be guilty of wrongdoing under this section, the debtor must have been a fiduciary of an express trust and not one implied by law from the wrongful act itself. *See* 3 *Collier on Bankruptcy* ¶ 523.14[1][c] (15th ed. 1989) and cases cited.

26. Likewise, Section 523(a)(6) [13] does not furnish a sufficient ground for a determination of nondischargeability in this case. The Court is unable to infer the high degree of malice and a determined intention to cause harm to the plaintiffs from the facts presented. *See* 3 *Collier on Bankruptcy* ¶ 523.16 (15th ed. 1989) and cases cited.

## DAMAGES

27. The measure of damages in a Section 10(b) case is the plaintiff's actual out of pocket loss, i.e. the difference between the fair value of all that the plaintiff received and the fair value of what the plaintiff would have received had there been no fraudulent conduct. *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741, 762 (1956). *See also* Easterbrook and Fischel, Optimal Damages in Securities Cases, 52 U.Chi.L. Rev. 611 (1985).

28. However, in a case of securities fraud involving violations of Section 10(b) committed by a broker of a limited partnership tax shelter, the Supreme Court held recently that "rescissory recovery" of damages was proper. *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986).

29. In the instant case which is analogous to *Randall*, the measure of damages is the amount paid to the debtor for the

---

**12.** Section 523(a)(4) states that dischargeability of debt may be denied:

for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]

11 U.S.C. § 523(a)(4)(Supp. V 1987).

**13.** Section 523(a)(6) provides for the nondischargeability of a debt:

for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6) (Supp. V 1987).

purchase of limited partnership units by the plaintiffs, reduced by any cash flow benefits which they received.

30. In computing such damages, however, the Court will not include payments made by the plaintiffs after April 1, 1980, the date they filed suit in the Delaware district court, because they were then on notice of the debtor's fraud and cannot claim to have been defrauded thereafter. *See Arrington v. Merrill, Lynch, Pierce, Fenner & Smith,* 651 F.2d 615, 620 (9th Cir.1981). The plaintiffs have failed to justify the payments which they made to the debtor on June 1, 1980, two months after they sued him in the Delaware district court. Accordingly, the claims of the plaintiffs will be reduced as follows:

| STRITZINGER | $ 73,757.68 |
| | − 33,000.00 |
| | $ 43,757.68 |
| DCN | $358,278.86 |
| | −176,000.00 |
| | $182,278.86 |
| RUGER | $ 48,793.73 |
| | − 22,000.00 |
| | $ 26,793.73 |
| SCOTT | $ 47,794.56 |
| | − 22,000.00 |
| | $ 25,794.56 |
| TOTAL | $278,624.83 |

31. The amount awarded ($278,-624.83) as a nondischargeable judgment against the debtor will be augmented by prejudgment interest at the legal rate dating from June 1, 1979, based upon " 'fundamental considerations of fairness,' the degree of personal wrongdoing on the part of the defendant, whether such interest would be truly compensatory, the availability of alternative investment opportunities to the plaintiffs and the possibility that the time between the occurrence of the violations and the award of the judgment may have been intentionally prolonged by the plaintiffs." *Fox v. Kane–Miller Corp.,* 398 F.Supp. 609, 651 (D.Md.1975), citing *Norte & Co. v. Huffines,* 416 F.2d 1189 (2d Cir. 1969), *cert. denied sub nom. Muscat v. Norte & Co.,* 397 U.S. 989, 90 S.Ct. 1121, 25

L.Ed.2d 396 (1970). All of these factors support an award of prejudgment interest in this case. The selection of June 1, 1979 as the starting date for the running of interest is based upon the fact that it was the latest of two dates when the plaintiffs paid money to the debtor before the Delaware lawsuit was filed. The Court has found no evidence of foot-dragging on the part of the plaintiffs in connection with the prosecution of this suit. On the contrary, they have been dogged in their pursuit of this judgment.

32. The Court will not reduce the award by any amounts arguably received by the plaintiffs as tax benefits incidentally derived from their unwise investments in the Eagle enterprise. Any such amounts would be speculative at best, and additionally the debtor has not produced any evidence on this point. The Supreme Court also held in *Randall, supra,* that an award to Section 10(b) plaintiffs who invested in a limited partnership as a tax shelter should not be diminished by such tax benefits, notwithstanding the "actual damages" limitation of Section 28 of the Exchange Act.

ORDER ACCORDINGLY.

### SUPPLEMENT TO OPINION DETERMINING DEBT TO BE NONDISCHARGEABLE

After this Court entered its Opinion in the instant case on December 28, 1989, in which it determined a debt in the amount of $278,624.83 to be nondischargeable, the four plaintiffs who were the recipients of the judgments filed the instant motion to alter or amend. The basis for the motion is that this Court mistakenly reduced the amounts to which the plaintiffs were entitled based upon an incorrect assumption that some amounts were paid to the debtor after April 1, 1980, the date they filed suit against Mr. Der in the U.S. district court in Delaware. In fact, the complaint contained such an allegation, but the evidence is clear that no payments were made by the plaintiffs to the debtor after March 22, 1979. The Court finds that the failure of the complaint to conform to the proof with respect to the date of payments

is not a material variance so as to defeat the plaintiffs' right to claim the larger amount. Accordingly, the Court will amend its Opinion by striking Paragraph 30 of its Conclusions of Law and by amending Paragraph 31 to indicate the amount awarded as a nondischargeable judgment against the debtor to be $528,624.83, itemized as follows:

| | |
|---|---|
| Stritzinger | $ 73,757.68 |
| DCN | 358,278.86 |
| Ruger | 48,793.73 |
| Scott | 47,794.56 |
| Total | $528,624.83 |

A further amendment to Conclusion of Law No. 31 is the substitution of the date of March 22, 1979 in lieu of June 1, 1979 as the starting date for the running of prejudgment interest on the award.

Amended orders will be entered herewith granting judgments to the plaintiffs against the debtor in the amounts indicated. The debtor is hereby notified that his notice of appeal, filed January 9, 1990, after the plaintiffs' motion to alter or amend judgments, is legally void and that if he intends to file an appeal, a new notice must be filed within ten (10) days hereof. Bankruptcy Rule 8002.